GEORGE T. LOONEY, Appellee, v. CONSOLIDATED INDEPENDENT SCHOOL DISTRICT OF CROMWELL et al., Appellants.

**SCHOOLS AND SCHOOL DISTRICTS:** School Sites—Contract—Rescission and Cancellation. The purchase by a school board of a schoolhouse site after bonds for such purchase had been duly voted, but prior to any bond levy, and the due issuance of a warrant in payment for such site, are not canceled or rescinded by the subsequent action of the electors in voting to rescind their former action authorizing the bonds.

**SCHOOLS AND SCHOOL DISTRICTS:** Officers—Delegation of Authority. A school board may very properly delegate to its president the authority to receive a deed to property purchased by the board and to deliver the warrant in payment for such property.

**SCHOOLS AND SCHOOL DISTRICTS:** District Debts—Unavailable Defense. In an action on a school warrant duly drawn on the schoolhouse fund, it is no defense that the warrant is, in effect, payable out of such fund as may be on deposit *in a named bank.*

**MANDAMUS:** Subjects of Relief—Levy of Tax. Mandamus will lie to compel a board of school directors to levy a tax to pay a judgment, there being no money in the fund in question, and no effort having been employed to secure such funds.

Headnote 1: 35 Cyc. p. 935 (Anno.)    Headnote 2: 35 Cyc. p. 921. Headnote 3: 35 Cyc. p. 986 (Anno.)    Headnote 4: 38 C. J. p. 776.

*Appeal from Clarke District Court.*—Homer A. Fuller, Judge.

October 20, 1925.

Rehearing Denied February 19, 1926.

Action in equity, to require defendant district and its officers to pay a $3,000 warrant issued March 14, 1922; and in the event they have not the money in their hands so to do, a mandamus is prayed, commanding them to certify a tax to pay the same. Judgment was entered as prayed, and defendants appeal.—*Affirmed.*

*Clark & Byers,* for appellants.

*O. M. Slaymaker* and *R. E. Killmar,* for appellee.

Albert, J.—In the early part of 1920, certain territory lying in Union and Adams Counties was regularly formed into a consolidated school district. On the 3d of May following, at an election called for that purpose, the electors of said district voted to issue $75,000 worth of bonds for the purpose of building and furnishing a schoolhouse and securing a site therefor. Shortly thereafter, an action of *quo warranto* to test the legality of the organization of the district was brought. On the trial thereof in the district court, relators lost, and on appeal to the Supreme Court, the judgment of the district court was affirmed, on February 7, 1922. See *State v. Kinkade,* 192 Iowa 1362.

In the intervening time, negotiations were had between the appellant school board and the appellee, looking to the purchase of a site for a schoolhouse, which resulted in appellee's giving to the appellant board an option to buy 5 acres of land owned by him, for the sum of $3,000, to be used as a schoolhouse site.

On the 11th day of March, 1922, appellant board of directors met, with all members present, accepted appellee's offer, and voted unanimously to buy said property for $3,000. The record of the board reads:

"Director F. M. Webb offered a motion that the president of the Consolidated Independent School District of Cromwell in the counties of Union and Adams, state of Iowa, be empow-

ered to close the option with G. T. Looney for school building site as previously agreed upon, and a warrant be drawn upon the school treasury to be paid out of the first money received from the sale of bonds, and warrant to be delivered to said, G. T. Looney as soon as deed to land is delivered. Consideration to be $3,000. Director Grant Sammons seconded the motion. On roll call the motion was unanimously carried.''

Pursuant thereto, a warrant was issued, as follows:

''No. 278                    State of Iowa, March 14th, 1922

''The Treasurer of Consolidated Independent District of Cromwell, in Union and Adams County, pay to George T. Looney, or order, the sum of Three Thousand and no/100 Dollars, out of School House Fund deposited in Cromwell Bank, Cromwell, Iowa.

''By Order of Board of Directors.

                                ''E. E. Kinkade, President,
''$3,000                         G. E. Sutton, Secretary.''

On the left margin appears the following:

''David Gault, Treasurer,
''Address, Cromwell, Iowa.''

This warrant was presented by the president of the board to Looney, who thereupon, with his wife, made proper warranty deed to the defendant for the land in controversy. On the 20th of March, 1922, said warrant was presented to the treasurer of the district, who indorsed the same, and marked it ''Not paid for want of funds.'' On the 12th day of August, 1924, the instant action was brought.

The aforesaid deed was received and accepted by the president of the board, and was recorded by him in the proper county records. Later, written demand was made on the appellants for payment of the warrant. As throwing some light on this situation, the following facts are established, under the record: After the establishment of the consolidated district and the voting of the bonds, dissatisfaction and contention arose among the various inhabitants of the district, which seems to have been carried into the March, 1922, election of directors. No proposition of any kind was submitted at that election, ex-

cept the question as to who should be the directors. Each contending faction put its candidate into the field, and the result, when the votes were counted, was that the faction favoring the abandonment of the bond issue was successful in electing their candidate.

Negotiations had been conducted with Bechtel & Company for the sale of the bonds, and on March 2, 1922, by three separate resolutions, $60,000 worth of the bonds were sold to it.

On March 20, 1922, the newly elected officers were inducted into office, and the new board was organized. At this meeting two resolutions were passed, the first one reciting a belief on the part of the board that the bond issue was illegal and invalid, and that the same was true of the sale of the bonds to Bechtel & Company. The treasurer of the district was ordered not to receive the proceeds of the sale of said bonds or any part thereof. The second resolution resolved that the purchase of the said schoolhouse site from George Looney was illegal and void, and that the price was excessive and unreasonable, and amounted to fraud on the district; and directed the treasurer, Gault, not to disburse any of the funds of said district now in or thereafter to come into his possession for the payment of the same. At a meeting of the board of directors on April 10, 1922, by motion it was ordered that the president of the board tender deed to George Looney, reconveying the property now owned by the Cromwell Independent School District of Union and Adams Counties. While it is of little importance to this lawsuit, following this action of the board the president interviewed the appellee, and attempted to carry out the purpose of the resolution. As a matter of fact, no deed was ever completely executed, conveying the property from the defendant to the plaintiff; but, on the trial of the case below, the defendant offered to reconvey.

The contention between the factions in this school district did not abate as time went on, but seemed to become more hectic. On February 26, 1923, at the meeting of the board of directors, a petition was presented, praying that the action of the electors of the district, in voting bonds on May 3, 1920, be rescinded and canceled. A special election was thereupon called by the board for the 10th of March following, at which election was submitted the proposition of canceling and rescinding the authority given

to the directors to issue the $75,000 in bonds for the purpose of building the schoolhouse. The majority of the electors voted in favor of this rescission and cancellation.

The evidence in the case shows that, under the resolutions of the board on March 2, 1922, relative to the sale of the bonds to Bechtel & Company, the bonds were duly prepared by Bechtel & Company and presented to the board for signature. Bechtel & Company offered to pay to the district the money for said bonds, upon proper execution of the bonds by the officers of the district; but such officers refused to execute said bonds and refused to receive the money therefor.

The first proposition urged by the appellant is that the district was without power and authority to purchase appellee's property, "for the reason that the only authority the board had to deal with the plaintiff in respect to a site was the authority granted by the electors at the bond election in 1920; and the bond issue plainly having been abandoned, no bonds sold and no levy made, the authority of the board has ceased."

1. SCHOOLS AND SCHOOL DISTRICTS: school sites: contract: rescission and cancellation.

The selection of a schoolhouse site rests wholly with the board of directors (Chapter 26, Acts of the Thirty-seventh General Assembly), and the manner of reviewing that selection is by appeal to the county superintendent. *Hufford v. Herrold*, 189 Iowa 853.

As noted, the appellants' claim is that the board had no power to purchase this site, except under the special power given at the special bond election in March, 1920. We doubt very seriously whether this contention is true; but, if we assume that it is, the reasons urged by the appellants do not appeal to us. Their principal contention is that the bond issue had been plainly abandoned. This contention, however, is not sustained by the record. There can be no doubt but that the board acquired the right to purchase this site by reason of the authority given them by the election of 1920. It was so specifically nominated on the ballot, and this authority could be exercised at any time by the board until the same was recalled by the power that gave it. The fact that there may have been a contention over who should be school director at the spring election in March, and that persons who were opposed to the bond issue were successful,

is a matter of little moment or weight in the consideration of this question. The evidence in the case shows that, shortly after this time, the board, by resolution, accepted the Bechtel bid, and sold bonds to the amount of $60,000 to Bechtel & Company. It is, therefore, quite apparent that the bond project plan had not been abandoned. Neither is the fact that no levy had been made, of much persuasive force on this proposition. The appellant is hardly in a position to urge that the power did not exist in the board to purchase this property because no bonds had been sold, when the evidence in the case shows that the reason the bonds were not sold was because the board refused to carry out the plan and receive the money for the bonds.

Appellant further urges that the board of directors was without authority to delegate to the president and secretary the power to enter into a contract with the appellee for the purchase of the land in question. "Such power rests solely with the board, and cannot be delegated."

2. SCHOOLS AND SCHOOL DISTRICTS: officers: delegation of authority.

As heretofore recited, this land was optioned by the appellee to the board for $3,000. At the meeting of the board, a motion was made and unanimously carried, to accept the offer and close the option at $3,000, for the particular land in controversy. This was the official action of the board, and all that the president of the board was instructed to do, and all that he in fact did do, was to turn over to the appellee, Looney, the warrant for $3,000, and receive from Looney the deed. The power, therefore, delegated to the president of the board in this instance was wholly ministerial. *Kinney v. Howard*, 133 Iowa 94; *State ex rel. Trauger v. Nash*, 66 O. St. 612 (64 N. E. 558); *Hitchcock v. Galveston*, 96 U. S. 341 (24 L. Ed. 659); *City of Burlington v. Dennison*, 42 N. J. Law 165; *Holland v. State*, 23 Fla. 123 (1 So. 521).

It is our holding that the board in its official capacity selected this site and bought this property, and what the president of the board did in procuring the deed and recording the same was purely ministerial.

It is next urged that the action of the electors, at the election in 1924, rescinded the power of the board and withdrew whatever authority it had to carry out any part of the power

3. SCHOOLS AND
SCHOOL DIS-
TRICTS: district
debts: unavail-
able defense.

granted in the bond election of 1920. This rescinding resolution of the electors, however, occurred approximately four years after the transaction in controversy,—rather late in the day to be available as against the appellee herein, who made a valid and binding contract with the district under and by virtue of the power granted in the bond election in 1920. It is claimed, however, by the appellant that the transaction between the plaintiff and the board did not result in a binding contract, for the reason that the official action of the board in accepting the offer of appellee contained the provision "that a warrant be drawn upon the school treasurer to be paid out of the first money received from the sale of bonds." The warrant issued to him did not contain any such provision.

Section 4317 of the Code of 1924 provides for a schoolhouse fund. The warrant issued to the appellee provided that it was to be paid out of the schoolhouse fund deposited in the Cromwell Bank, Cromwell, Iowa. Appellants claimed for this, however, that the effect of this proviso was to bring it within the rule governing provisions for payment from a specific or particular fund, and rely strongly on the case of *Midwest Sec. Corp. v. City of Des Moines,* 200 Iowa 245. That case has no application to the situation before us. The city of Des Moines had a city ordinance, of which the plaintiff in that case was bound to take notice, providing that the very claim it was seeking to enforce was payable out of specific funds, to be raised by special assessment. The court in that case read said ordinance into the contract, and interpreted it as a part thereof, and held that thereby the claimant had agreed that he was to be paid from that specific fund when so raised.

Appellants cannot escape liability herein by reason of their having written into their warrant that it was to be paid from the schoolhouse fund on deposit in the Cromwell Bank. Further than this, if it be assumed that the appellants' contention in this respect is entitled to consideration, if the contract had been such as claimed by them, and if this property was to be paid for from the proceeds derived from the sale of the bonds, they, having sold the bonds and refused to receive the proceeds therefrom, are not now in a position to urge that the purchase was

invalid or avoidable, because their own affirmative acts brought about the very condition which they say should permit them to recede from the purchase.

It is next urged by the appellants that:

"The price fixed for the land, and agreed to be paid by the president of the board in his negotiation with the plaintiff, was excessive and unreasonable, it appearing from the fair weight of evidence that the land was not worth to exceed $1,200."

This question is material in the determination of this case. It was a disputed question of fact, and credible testimony was introduced on each side of the proposition. We have carefully read the same, and agree with the conclusion of the lower court.

Viewing it as a whole, we are content to hold, under this record, that the district bought this land for a schoolhouse site, and that the board had power to purchase at the time it did, and we can see no reason why they should not pay for the same. If they do not care to use it, they may sell and dispose of it in the manner provided by law.

Lastly, it is urged that the mandamus ordered herein should not have been ordered. Having determined that the appellants should pay for said property, if the appellants have no funds on hand with which to pay for the same, we know of no method by which they can acquire the same except by taxation. As appellee waited two years for payment of his claim, and appellants did not pay it or make any effort to acquire funds to pay it, we are of the opinion that the district court was right in issuing the order for mandamus. That this is the proper procedure is beyond dispute.

4. MANDAMUS: subjects of relief: levy of tax.

Mandamus, under the Iowa practice, was originally an action at law; but Chapter 168 of the Acts of the Thirty-second General Assembly (Section 4341, Code Supplement, 1913) changed the action to one in equity. Section 12444 of the Code of 1924 provides:

"The plaintiff in any action, except those brought for the recovery of specific real or personal property, may also, as an auxiliary relief, have an order of mandamus to compel the performance of a duty established in such action."

This action was commenced in equity, with a prayer for

equitable relief. In *Reiger v. Turley*, 151 Iowa 491, this court said:

"Under the general prayer of the original petition, it was competent for the court to grant any relief which appeared to be equitable under the facts pleaded and proved, even though such relief had not been specifically demanded."

If the appellee had a judgment against the appellants herein without the auxiliary relief given him by the mandamus, he would be helpless. We know of no reason why appellants should not be compelled to pay this legitimate debt, and we know of no other remedy or means of enforcing the payment thereof except as provided by the district court in its order for mandamus.

We are quite familiar with the rule cited by appellants that mandamus cannot be used as a collection agency or to enforce contractual rights, nor is it available where there is a speedy or adequate remedy at law; but we have sought in vain for any other remedy available to the appellee. He has his claim established in this matter, and, if the appellants have no funds on hand with which to pay the same, they can only secure such fund by the levy of a tax, and we see no reason why they should not do so.

It is stated in appellee's amendment to the abstract of record that the appellant board did certify to the auditor and boards of supervisors of Union and Adams Counties a sufficient levy to pay the appellee's judgment, interest, and costs, prior to July 15, 1925. If this be true, there will be sufficient funds on hand to meet this claim; and, the decree herein having thus been partially performed, the whole question becomes moot.

The lower court's action is approved.—*Affirmed*.

FAVILLE, C. J., and EVANS and MORLING, JJ., concur.