E. H. MCANULTY, Administrator, et al., Appellants, v. DEAN W. PEISEN, Executor, et al., Appellees.

No. 39626.

*Aymer D. Davis, Thomas & Thomas,* and *Willard F. Russell,* for appellants.

*Dean W. Peisen,* for Kathryn Hanson and *pro se,* appellees.

*Howard G. Fuller* and *E. H. Lundy,* for Alta Wood, Robert Lyon, and Earl Lyon, appellees.

*Williams & Steinberg,* for James Lyon and Gary Lyon, appellees.

MORLING, J.—The ultimate question is whether the alleged cause of action is one triable on the law or the equity side of the court. The motions are not for the transfer of equitable issues, but are for the transfer of the cause to equity, on the ground that the plaintiffs are in error in the kind of proceedings adopted, an error which defendants are entitled to have corrected by motion before answer, as provided in Sections 10943 to 10946, inclusive, Code of 1927.

Sections 10940 and 10941, Code of 1927, read as follows:

"10940. All forms of action are abolished, but proceedings in civil actions may be of two kinds, ordinary or equitable."

"10941. The plaintiff may prosecute his action by equitable proceedings in all cases where courts of equity, before the adoption of this Code, had jurisdiction, and must so proceed in all cases where such jurisdiction was exclusive."

These sections had their origin in the "Code of Civil Practice" Act, incorporated in the Revision of 1860, Sections 2608, 2610, 2611. The case must be determined under the last clause of Section 2611, Revision of 1860 (Section 10941, Code of 1927): "and must so proceed in all cases where such jurisdiction was exclusive,"—that is, exclusive prior to the adoption of the Code of Civil Practice Act of 1860. The exclusive jurisdiction of equity embraces two classes of cases: First, those in which the plain-

tiff's case is founded upon an equitable estate, title, or interest.; and second, those in which the remedy sought is one that only a court of equity can administer. 1 Pomeroy's Equity Jurisprudence (4th Ed.), Section 137 *et seq*. The motions must necessarily be determined upon the plaintiffs' own allegations.

Plaintiffs aver that they are administrator and heirs at law of Viola Lyon, who died October 25, 1926, leaving then surviving her husband, H. A. Lyon; that Viola Lyon and H. A. Lyon were married in 1901, shortly after which, H. A. Lyon and Viola Lyon "entered into a common enterprise or joint arrangement or undertaking, wherein, by means of merchandising, money lending, the discounting of commercial paper, and in other ways, they accumulated a considerable amount of property, the major portion of which is set out in Exhibit A." (What the "joint arrangement" then was is not further alleged.) It is alleged:

"That Viola Lyon made a good-faith claim to an equal undivided share and interest in each and all of said properties, in whatever form they were, or in whatever properties they were invested, and said claim was acknowledged, allowed, consented and agreed to by Howard A. Lyon; that, prior to the month of April, A. D. 1925, Viola Lyon and H. A. Lyon entered into an oral agreement in respect to such properties, whereby, in consideration of their joint efforts, and in consideration of said good-faith claim made and allowed by said H. A. Lyon, in consideration of the title of said property remaining as it was at said time, and in consideration of neither party demanding a separation or division of said properties, they were to remain intact during their joint lifetime, and upon the death of one or the other, the properties were to remain intact, and to be used by the survivor as long as the survivor lived, and at his or her death, were to be divided, and go the one half thereof to the heirs at law of Viola Lyon, and the other one half to the heirs at law of H. A. Lyon. * * * That said H. A. Lyon, after the death of Viola Lyon, claimed that the agreement as set out herein was made between him and Viola Lyon, and stated that it was binding upon him, and that he fully intended to and would carry the same out."

It is alleged that H. A. Lyon died March 22, 1927; that, until after the death of Viola Lyon, H. A. Lyon claimed that the agreement as set out in the petition was made and was binding

upon him, and he would carry it out; that he entered into marriage contract with defendant Kathryn Lyon, and was induced by her to make a will, "giving one half of the properties in question to his claimed wife, whoever she might be,"—not, however, naming her. The other half of the properties he attempted to give by his alleged will to defendants Alta Wood, Robert Lyon, and Earl Lyon. It is alleged that defendant Dean W. Peisen is the executor, and defendants James Lyon and Gary Lyon are the only heirs of H. A. Lyon.

"That, by reason of said contract and pursuant thereto, the said Viola Lyon permitted the properties in question to remain as they were, and with the legal title in said H. A. Lyon, and procured no division or separation thereof, and relied upon said contract and said agreement, believing that said H. A. Lyon would carry the same out, as he had promised and agreed."

It is alleged that, upon the death of Viola Lyon, H. A. Lyon took all of said property and enjoyed its use until his death.

"That, upon the death of said H. A. Lyon, the title to one half of said property at once became vested in these plaintiffs, pursuant to the terms of said contract and agreement made in their behalf. That said H. A. Lyon, during his lifetime, and after the death of said Viola Lyon, converted certain portions of said properties into moneys and credits and other forms of properties, and these plaintiffs are unable to give a particular description of all the properties that were covered by said contract and agreement and which came into the hands of said H. A. Lyon and to which the plaintiffs are now entitled, but plaintiffs aver that the said H. A. Lyon died in the possession of the properties described in Exhibit A."

It is further alleged that defendant executor "entered into possession of all of the same, claiming the possession and ownership thereof as the alleged executor of the estate of H. A. Lyon, deceased. That, as such executor, the defendant Dean W. Peisen has converted a large amount of said properties into moneys and credits, and these plaintiffs are unable at this time to state what portion of said properties remains in the form in which it was at the time of the death of H. A. Lyon, and what portion has been converted by the said Dean W. Peisen."

"That the defendants Alta Wood, Robert Lyon, and Earl Lyon claim to have some interest in said properties, as the claimed legatees under an alleged document claimed to be the last will and testament of H. A. Lyon, deceased. That Kathryn McMichael, or Kathryn Lyon, or Kathryn Hanson, who seems to be one and the same person, claims an interest in said properties under said alleged document, as the claimed surviving widow of H. A. Lyon, deceased. That plaintiffs aver that any right, title, or interest or claim that the defendants or any of them might make in or to said properties is junior and inferior to the claim of these plaintiffs to the undivided one half thereof, and plaintiffs aver that said properties and the proceeds of the conversion thereof are now in the possession and control of the defendant Dean W. Peisen.

"That said Dean W. Peisen makes the claim that he is the executor of the estate of H. A. Lyon, deceased, and as such executor claims title and ownership of all the properties in question, adverse to the rights, claims, and demands of these plaintiffs. That he makes claim to the title and ownership of said properties through a mistake as to his rights therein, all as alleged and stated in this petition.

"That the alleged document under which he claims the possession and ownership of the same is of no validity as to the one half of the properties in question, which belongs to these plaintiffs."

Plaintiffs further allege that defendant Dean W. Peisen, on examination in court, denied the right of any of the plaintiffs to any interest in the properties; "that plaintiffs have the ownership and right to the immediate possession of the undivided one half of the properties in question, and they have had such ownership and right to possession of said one half of said properties since the death of H. A. Lyon, on the 22d day of March, A. D. 1927, and all of said rights have been denied to them by the defendants. That the one-half value of said properties at the time of the death of H. A. Lyon was the aggregate sum of $54,-708.51."

The plaintiffs do not state whether any of the property acquired by decedents was real property, nor do they further describe the property alleged to have been accumulated, or the

property into which H. A. Lyon is alleged to have converted it. The exhibit to the petition is stated in the abstract to have set "forth an itemized statement of the properties belonging to the estate of H. A. Lyon, deceased, at the time of his death, a recapitulation of the exhibit being as follows: 'Recapitulation. Money on deposit $5,721.96, Book Accounts $1,052.96, Bank Stock $2,200.00, Corporation Stock $10.00, Notes $100,432.10. Total $109,417.02.' '' The abstract further proceeds:

"All of which property is personal property, and all the property involved is personal property. No right, title, interest, or claim in or to real estate is involved in this litigation."

The prayer of the petition is for "judgment against the defendants, and each of them, for the sum of $54,708.51, with 6 per cent interest thereon from the 22d day of March, A. D. 1927, and for costs of suit, and for such other and further orders and judgments of court as will do justice to the plaintiffs in the premises."

Certainly it is an equitable title and interest, not a legal title, in the plaintiffs that is the basis of the action. It is averred: "In consideration of the title to said property remaining as it was at said time," and, "by reason of said contract and transfer thereto, the said Viola Lyon permitted the properties in question to remain as they were, and with the legal title in said H. A. Lyon, and procured no division," and that H. A. Lyon "converted certain portions of said properties into moneys and credits and other forms of property," and "that any right, title or interest or claim that the defendants or any of them might make in or to said properties is junior and inferior to the claim of these plaintiffs," and that defendant executor "makes claim to the title and ownership of said property through a mistake as to his rights therein * * *" It is the plain effect of plaintiffs' allegations that "the legal title" to the properties was in H. A. Lyon, and that, after the death of both parties, the properties were to be divided, one half to go to the heirs of Viola Lyon, and the other half to the heirs of H. A. Lyon. On plaintiffs' allegations, if the wife survived, she was to have the use of the whole property during her life. Whichever survived, the legal title to one half of the property was, on the death of the survivor, required to be conveyed to the wife's "heirs." The legal title,

therefore, was subject to uses contingently, to a use of the whole in the wife for life, and absolutely, to a use to convey one half to the wife's "heirs," on the death of the survivor. (We are not here concerned with the statute of uses.) The legal and equitable interests were separated, and a trust or confidence was reposed in the husband, and after his death, in his administrator. The agreement alleged creates a trust. *Allen v. Rees*, 136 Iowa 423; *Dillenbeck v. Pinnell*, 121 Iowa 201; 1 Pomeroy's Equity Jurisprudence, Section 149 *et seq.*; 3 Idem, Section 987. The legal title, therefore, at the death of H. A. Lyon (he having survived his wife), passed (if personal) to his administrator, and (if real) to his heirs, subject to execution of trust by them or by a new trustee. 26 Ruling Case Law 1260; *Reyburn v. Mitchell*, 106 Mo. 365 (16 S. W. 592, 27 Am. St. 350). The administration and enforcement of trusts are exclusively within the jurisdiction of equity. 1 Pomeroy's Equity Jurisprudence, Section 149 *et seq.*, 218 *et seq.* Of course, we are not concerned with the question of proof or of the statute of frauds. The allegation is that, upon the death of H. A. Lyon, "the title to one half of said property at once became vested in these plaintiffs, pursuant to the terms of said contract and agreement." This is a mere conclusion on the part of the pleader. The only "title" that could become vested in the plaintiffs would be the equitable title. The petition alleges as a fact the making of an executory contract, final performance of which was to be made after the death of both parties. There was no transmission of title during the lifetime of H. A. Lyon. He died the owner of the legal title, and the legal title passed to his administrator, impressed with the trust to make division. The "title" which passed to the plaintiffs, which plaintiffs allege became vested in them on the death of H. A. Lyon, could only be an equitable title; and "the ownership" and right to immediate possession of the undivided half which plaintiffs allege they have had since the death of H. A. Lyon are the equitable ownership of the half, and the right to possession pursuant to the terms of the executory contract. The plaintiffs' further allegations recognize the legal title in the defendants, for plaintiffs "aver that any right, title, or interest or claim that the defendants or any of them might make in or to said properties is junior and inferior to the claim of these plaintiffs to the undivided one half thereof * * *." Plaintiffs do not

set out the name in which the money on deposit, the book accounts, and the stock stand, or the names of payees of the notes, but, on their allegations, it must be held that the name is not, as to the whole or as to part, that of Viola Lyon or of the administrator of her estate or her heirs; for, if such were the case, the suit would not be brought or the allegations made in their present form. It is a necessary conclusion from the allegations of fact that the evidences of legal title or ownership to the bank deposit, book accounts, stock, and notes give the name of H. A. Lyon as the owner. Plaintiffs must, therefore, on their allegation establish an express trust in H. A. Lyon and in his representatives for an undivided one-half interest in the property which was owned at the time of the death of Viola Lyon, and consequently a trust in the property which H. A. Lyon, at the time of his death, still held, or that into which he had converted trust property.

Passing now to the further question whether the remedy sought is one which, prior to the adoption of the codifying act, was one within the exclusive jurisdiction of a court of equity to grant, we may first consider whether a cause of action at law is alleged. Plaintiffs set out a contract, but the petition does not sound in damages for breach of contract.

It is, of course, not claimed that, because H. A. Lyon did not convey, he broke his contract and subjected his estate to liability for damages. He did not undertake to convey. His administrator (if we assume the validity of the alleged agreement) is under duty to divide and convey, because he holds the title under a trust to make distribution. He has lawful possession. There is no specific property that can be said to belong to plaintiffs and to which they are entitled, as against defendants. Plaintiffs are entitled to have the administrator (or, if he neglects, the court) make a division or partition of numerous items of intangible property. This may require sale. It will at least require valuing, grouping, and assignment of groups as shares. This cannot be accomplished through any known proceeding or process at law.

The action does not sound in tort for conversion of the property. It is alleged that H. A. Lyon "converted certain portions of said properties into moneys and credits and other forms of property," and that the executor "has converted a large

amount of said properties into moneys and credits;" but there is no claim that such conversion was unauthorized by the agreement on which plaintiffs base their case. It was the implied duty of the trustee to keep the trust fund invested. 39 Cyc. 389; 26 Ruling Case Law 1304. It is said that the defendants are claiming the property, or an interest in it, but that any interest they have is inferior to the claim of the plaintiffs; that the executor makes claim "through a mistake as to his rights;" and that the document under which he claims "is of no validity as to the one half;" and that plaintiffs "have the ownership and right to the immediate possession of the undivided one half." The action is not against the administrator alone, but against others, who are not alleged to have had possession or to have participated in its control or management, and whose claim, not denied as to one half, as to the other half is alleged to be inferior to plaintiffs. It is to one half of the property in its present form, rather than to damages for its unlawful conversion, that plaintiffs are laying their claim. The trust was not executed. Plaintiffs and defendants, on the allegations, were, in equity, co-owners. Defendants were as much entitled to the possession as were the plaintiffs. They are plainly not suing for damages as in trover, or for conversion, even if, on the facts alleged, an action of trover could be maintained. We are cited to no authority which would sustain such an action, and the law seems to be settled that trover will not lie, on the facts alleged. *Conover v. Earl*, 26 Iowa 167; 39 Cyc. 572; 38 Cyc. 2049; *Kean v. National City Bank*, 294 Fed. 214.

Plaintiffs say that they have the ownership and right to immediate possession of an undivided interest. On their allegations, defendants have the legal title to the whole and the equitable ownership of an undivided one half. Defendant administrator rightfully obtained possession, and cannot be compelled to surrender to his co-owners. He may be compelled to administer the trust, or a new trustee may be appointed. 26 Ruling Case Law 1260, supra. If the trust had been fully executed, the plaintiffs might have had a remedy at law. *Claussen v. La Franz*, 1 Iowa (Clarke) 226, 241. The allegations are not such as to enable the plaintiffs to maintain the action as one in replevin or detinue. The action cannot be maintained as one for an account at law; for it was held in *Stewart v. Kerr*, 1 Morris 240, that the

action of account at law does not lie in this jurisdiction. The remedy is in chancery.

The petition does not, in terms, set out a partnership. We need not anticipate further developments by determining whether or not the allegations imply a joint enterprise in general business, in which the profits were to be shared equally, or whether, therefore, the losses were to be so shared. See *Fleming v. Fleming*, 194 Iowa 71, 88; *Hindman v. Secoy* (Mo. App.), 218 S. W. 416. If a partnership is alleged, there having been no private settlement, the remedy is exclusively in equity, for settlement and accounting. *Kuhn v. Newman*, 49 Iowa 424; 30 Cyc. 715; 21 Corpus Juris 132. The plaintiffs set out a contract and their right to a half interest in the property under such contract. If their claim is to have the contract specifically performed, of course, the relief is exclusively in equity. They are, in fact, asking for a partition of chattels among the co-owners thereof, to the extent, at least, that plaintiffs are asking that their half be set off to them. This is a remedy within the exclusive jurisdiction of equity. *Warren v. Boggs*, 83 W. Va. 89 (97 S. E. 589); 30 Cyc. 175; *Robinson v. Dickey*, 143 Ind. 205 (42 N. E. 679); 21 Corpus Juris 132, 679, *et seq.*; 5 Pomeroy's Equity Jurisprudence (4th Ed.), Section 2133; 4 Pomeroy's Equity Jurisprudence (4th Ed.), Section 1391; *Laing v. Williams*, 135 Wis. 253 (115 N. W. 821); *Conover v. Earl*, 26 Iowa 167.

The plaintiffs allege that the one-half value of said properties at the time of the death of H. A. Lyon was the aggregate sum of $54,708.51. This is one half of the face value, without interest or dividends, of the deposit, stock, and notes, as set out in the "recapitulation." The prayer for judgment is for this sum, with 6 per cent interest, and for costs, "and for such other and further orders and judgments of court as will do justice to the plaintiffs in the premises." It is usual in bills in equity to pray for the specific relief desired, and also for general relief. There is no prescribed form, however, for this general prayer, and it may be very informal. 21 Corpus Juris 388. If it be conceded that the prayer for specific relief is justified by the allegations,—a point which we need not pass upon at this time,— the fact remains that the prayer, though not literally in the usual form, is, nevertheless, for general relief. Such prayer is utterly foreign to an ordinary action at law, though, of course,

not determinative that the cause of action pleaded is not at law. *Markley, Alling & Co. v. Keeney*, 87 Iowa 398. So that the plaintiffs have put their own interpretation on their cause of action as one for equitable relief. The case is submitted here upon the petition. No answer has been filed, and the case is not one of equitable issues set up in defense. It is not a case of separation of issues. It is not a case where a defendant pleads legal and equitable defenses, or defenses which may be one or the other, and which may be interpreted in accordance with his prayer for specific relief. It is not a case of seeking to transfer to equity a defense that may be set up at law. It is not a case of a petition setting out a cause of action at law. The cause of action must be determined by the allegations of fact, and not merely by the relief claimed. Even in equity, a money judgment may be claimed. The claim for a money judgment does not determine that the cause of action pleaded is at law. The relief asked is the relief to which the plaintiffs, from the tenor of their entire petition, show themselves entitled, and the nature of the relief must be determined from all of their allegations, and not merely from their prayer for a money judgment. Of course, such prayer is taken into account, but that one element of the entire prayer cannot be eliminative of the rest of it, nor determinative of the cause of action or of the scope and nature of the relief which the plaintiffs claim or are entitled to. Cases cited to the effect that a prayer for money judgment determines the action to be one at law are not in point. These are cases in which the relief sought or defense claimed is or may be had at law, or where the issue tendered is at law, and are not cases in which the right sought to be protected and enforced is purely equitable, or where the remedy sought is within the exclusive jurisdiction of equity. *Boyce v. Allen*, 105 Iowa 249; *Lynch v. Schemmel*, 176 Iowa 499; *Watson v. Bartholomew*, 106 Iowa 576; *Hanan v. Messenger*, 168 Iowa 507; *Price v. Aetna Ins. Co.*, 80 Iowa 408; *Kelly, Maus & Co. v. Andrews*, 94 Iowa 484; *Newman v. Covenant Mut. Ben. Assn.*, 72 Iowa 242; *Darst v. Fort Dodge, D. M. & S. R. Co.*, 189 Iowa 632.

Demand for a money judgment in suits in equity is frequent. It does not determine that the cause is improperly brought in equity, or that the plaintiff is not entitled to equitable relief; but, under the general prayer, the court may grant any relief which,

upon the facts pleaded and proved, is within the jurisdiction of equity, though not specifically demanded. *Reiger v. Turley,* 151 Iowa 491, 498, 499. It is the allegations of the cause of action, and not the prayer alone, that determine the forum. Idem; *Darst v. Fort Dodge, D. M. & S. R. Co.,* 189 Iowa 632, 635. It is the allegations and proof that determine the relief which the court may grant under the general prayer, and not the specific relief prayed. The court, under the prayer for general relief, may grant any relief sustained by the allegations and proof, even though the petition was not framed with reference to the partic- ular relief to which plaintiff is so entitled. The allegations, supported by the proof, give the parties their day in court. *Paton v. Lancaster,* 38 Iowa 494, 496; *Iler v. Griswold,* 83 Iowa 442; *Pond v. Waterloo Agricultural Wks.,* 50 Iowa 596, 605; *American Trading & Stg. Co. v. Gottstein,* 123 Iowa 267, 269; *Hoskins v. Rowe,* 61 Iowa 180, 182; *Thomas v. Farley Mfg. Co.,* 76 Iowa 735, 737; *Johnston v. Myers,* 138 Iowa 497, 500; *Hogueland v. Arts,* 113 Iowa 634, 639; 21 Corpus Juris 679 *et seq.*; *Looney v. Consolidated Ind. Sch. Dist.,* 201 Iowa 436; *Carns v. Sexsmith,* 193 Iowa 1080.

The prayer for general relief is as broad as the powers of the court. *Converse v. Incorporated Town of Deep River,* 139 Iowa 732, 741. Of course, in case of default, the relief granted cannot exceed that demanded, and it may be that the opposing party in particular cases is taken by surprise; but no such question arises on this record. In substance, the plaintiffs' petition calls merely for the enforcement of the alleged oral agreement through the execution of the trust by a division of the property. The only case made is one within the exclusive jurisdiction of equity.

Plaintiffs in argument disclaim equitable relief. They had full opportunity to amend their petition, but did not. Their case must be determined upon their petition as they filed it and permitted the court to rule upon it, and not upon a disclaimer made in another court, in order to obtain reversal of a ruling which was correct on the record which they made in the trial court. By the express language of the statute, plaintiffs "must so proceed [by equitable proceedings] in all cases where such jurisdiction was exclusive." The case made (if any) is one which was, at the time of the adoption of the Code, exclusively within the jurisdiction of equity.

To permit a plaintiff, while making allegations of a cause that, if sustainable at all, is sustainable only in equity, by the device of asking for a money judgment, and by entitling and docketing at law, and by extraneous disclaimer of intention to resort to equity, to neutralize his allegations and frustrate motion to transfer, which must be made before answer, would be to unreasonably embarrass, if not to defeat, a defendant altogether in the exercise of his right to be heard in equity.

Through the centuries, great chancellors have developed and administered a system of equity jurisprudence founded on and animated and vitalized by maxims and principles which, though equitable, and though mitigating and alleviating the rigors of the common law, are not arbitrary or capricious. They are themselves rules of law. Equitable principles and remedies are best understood and may best be administered by the trained and experienced mind of the chancellor. By the constitutional and statutory law of the state, the separate jurisdictions of courts of law and courts of equity are preserved. The right to the application of the principles of equity to causes exclusively equitable and the right to a trial by the chancellor and to trial *de novo* by the appellate bench are rights as sacred as the right to have causes at common law determined according to the principles of the common law and by the common-law judge, or the judge and jury, whose decision may be revised only for errors of law. A defendant wrongfully sued on the law side of the court has the statutory remedy to move for change to the equity side. The duty of the court to order the change in causes which, before the adoption of the Code, were exclusively of equitable jurisdiction, is peremptory. The existence of a cause of action on the facts alleged is not here for determination. It is sufficient for present purposes that plaintiffs are claiming to have set forth a cause of action, and defendants, for present purposes, are not disputing it. The question of the provability, validity, or enforcibility of the agreement on which plaintiffs found their suit, and of the trust resulting therefrom, is not now before us.—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, DE GRAFF, KINDIG, and WAGNER, JJ., concur.

STEVENS, J., dissents.

STEVENS, J. (dissenting).—The opinion of the majority in this case, as I interpret the record, proceeds upon the erroneous assumption expressed in the first sentence thereof, that "the ultimate question is whether the alleged cause of action is one triable on the law or the equity side of the court." This is not the question in the case. No such issue is directly or indirectly involved, as I view the record. The petition of plaintiffs is entitled "at law." Judgment against the defendants in the sum of $54,708.51 is asked. Defendants have filed no pleading, and necessarily have not, therefore, tendered an equitable issue. Considered abstractly, the general rules of law and equity stated in the opinion may, for the purpose of this dissent, be accepted at their full value. The difficulty is that they have no relevancy to the sole question presented for review. All defendants, either in groups or separately, filed motions to transfer the cause of action to the equity side of the docket, upon the ground that it appeared upon the *face of the petition* that the relief sought is in *equity*, and not at law.

Much significance is given to the following portion of the prayer of the petition : "And for such other and further orders and judgments of court as will do justice to the plaintiffs in the premises." Plaintiffs in argument disclaim that by the foregoing language they have intended to seek equitable relief. So far as it may, if at all, be considered as seeking relief in equity, plaintiffs absolutely repudiate it. Over and over again it is stated in argument that they neither seek nor desire relief upon any proposition in equity. The case is peculiar and rather unusual. The psychology of counsel for the respective parties is easily understood. The plaintiffs obviously do not desire to submit the facts which they can prove to the scrutiny and conscience of a court of equity. On the other hand, the defendants would avoid the possible hazard of a trial to the jury. The full purport and effect of the opinion of the majority are to make out a case for the plaintiffs in equity, although contrary to their wishes. Satisfied that this has been accomplished, they are, by the result, compelled, against their will, to accept a reversal.

First, let it be conceded that plaintiffs could have stated a cause of action in equity. Did they? What issue pleaded, upon any theory, requires for its proper disposition the interposition of a court of equity? The relief asked is a money judgment. This

must be kept in mind. There is neither allegation nor prayer for an accounting, nor for the partition of personal property. If the administrator of the H. A. Lyon estate has property in his possession belonging to plaintiffs, an order may readily be procured in probate for its restitution. The theory of the petition is that the administrator, as trustee, has in his possession the amount named, and that he refuses to account therefor to them: that is, that he has converted the same to his own use, or to the benefit of the estate. Perhaps this issue might well also have been tried and determined in probate. If H. A. Lyon, at the time of his death, held any property as trustee for Viola, he was, under the allegations of the petition, a trustee of an express trust. The allegations of the petition are that H. A. and Viola orally, or in writing, specifically agreed to pool their efforts and to ultimately share the corpus and profits of their joint efforts. The report of the administrator shows personalty in the form of cash or notes aggregating just double the amount for which judgment is asked. The administrator of the H. A. Lyon estate stands in the relation to the property of trustee. There is no reason why plaintiffs may not, if the facts exist, prove every allegation of their petition in an action at law. If they did so, their recovery would be one half in value of the corpus of the estate in the possession of the administrator or trustee. No accounting is sought, nor is any necessary. Partition of personalty, specific performance, or cancellation of some instrument is not sought or asked. All plaintiffs seek is a judgment for a specific amount which they allege to be due them. Can the right of the plaintiffs to prove the alleged contract between Viola and H. A. Lyon at law be questioned? Is there any reason why they may not prove what property, if any, was the subject of the trust and is in the custody of the administrator? If a trust existed, and H. A. Lyon held the property at the time of his death as trustee, the trust was express, and there is no reason why he may not be sued at law for the amount due. The interposition of a court of equity is not necessary at this point. Suppose, however, that plaintiffs have stated a cause of action on which no recovery may be had at law. How is that the business of the defendants? If plaintiffs have wholly misconceived the proper forum, and persist in the error, the worst that can happen to the defendants is to win their case. The opinion seeks to point out the proper course for plaintiffs to

pursue. Assume that they should have taken the designated course, rather than to attempt to prosecute the action at law. Surely, the defendants cannot be prejudiced by this error. Furthermore, it hardly needs to be stated that the plaintiffs can have no equitable relief in the law action. It is significant, and must be kept constantly in mind, that it is the *defendants* who are seeking to remove the cause of action to equity. It has long been settled in this state that, where only a money judgment is sought, and no equitable relief is prayed, the defendant may not, on motion, have the cause transferred to equity for trial. *Boyce v. Allen,* 105 Iowa 249; *Price v. Aetna Ins. Co.,* 80 Iowa 408; *Lynch v. Schemmel,* 176 Iowa 499; *Miller v. Hawkeye Gold Dredging Co.,* 156 Iowa 557; *Darst v. Fort Dodge, D. M. & S. R. Co.,* 189 Iowa 632; *Mitchell v. Beck,* 178 Iowa 786; *Watson v. Bartholomew,* 106 Iowa 576; *Hanan v. Messenger,* 168 Iowa 507; *Newman v. Covenant Mut. Ben. Assn.,* 72 Iowa 242.

The portion of the prayer to which the opinion gives particular emphasis is not only repudiated by the plaintiffs, but is wholly without significance or effect in the law action. Plaintiffs are not asking the transfer. It may be that plaintiffs may have cause to regret that they chose the law, instead of the equity, forum; but, until they seek equitable relief, they should be permitted to remain on the law side of the docket, no matter how fatal their determination may be to them. The motions of the defendants, in my opinion, have no merits, and should have been promptly overruled. It is not the office of this court to force plaintiffs into a forum they do not seek, nor to aid them to present a cause of action on which they may ultimately prevail, but which they now scorn. They have made their choice. They are entitled to proceed in the forum selected. It is immaterial that disaster may follow.

I am in favor of disposing of the case upon the sole and only question presented by the record, to wit: Did the court erroneously sustain the several motions to transfer the cause of action from the law to the equity docket? I think the ruling was erroneous, and I favor a reversal.