JOE S. UTTERBACK, Receiver, Appellee, v. W. W. STEWART et al., Appellants.

No. 44206.

1136

February 15, 1938.

Rehearing Denied May 13, 1938.

H. S. Life and David, Jones & David, for appellants.

Thomas J. Bray, for appellee.

Per Curiam—The property involved in the contract of sale which plaintiff in this action seeks to have performed originally belonged to one T. O. Stewart, who died testate in Mahaska County, Iowa, on the 22d day of July, 1935, leaving no child or spouse surviving him. His will was duly admitted to probate on or about the 30th day of July, 1935, and by the terms of the residuary clause in his will the property involved in this litigation was devised and bequeathed to his brother, W. W. Stewart, and two sisters, M. Elva Marmon and Delia B. Downey. Delia B. Downey was indebted to the Oskaloosa National Bank of Oskaloosa, Iowa, and a suit was brought upon this indebtedness, and an attachment was issued therein, and levy made upon her interest in said estate. By way of settlement of this indebtedness made between Mrs. Downey and Joe S. Utterback, receiver of said bank, said receiver obtained all the interest of Delia B.

Downey in the estate of T. O. Stewart, deceased, being an undi-vided one-third interest. By contract entered into on December 8, 1936, between said receiver and the other heirs, W. W. Stewart and M. Elva Marmon, the appellants herein, said receiver undertook to sell and convey to the appellants all his remaining interest in the property then owned by the estate. At the time this contract was entered into the estate was still pending and the appellants were also executors of the estate and had possession of the property of the estate. Prior to the time of the execution of the contract in suit, two separate tracts of real estate had been sold, both the receiver and the appellants joining in the conveyances, and the bone of contention between these parties is whether or not the contract in suit included these two tracts of land which had already been disposed of. In one instance, deed had been made and delivered and the consideration paid, and in the other the consideration had been placed in escrow, but had not been distributed and the deal had not been closed because of defects in the title. It is the contention of appellants that the contract involved in this suit included these two tracts, while the receiver contends that they were not included. The trial court found in favor of the receiver, and entered decree accordingly. We are abidingly satisfied the trial court was right.

The reading of the transcript of the entire record in this case brings one's mind unhesitatingly to the conclusion that appellants, in order to gain what seems to us an unwarranted advantage, undertook to twist and contort a simple contract and the plain intent of the parties, as expressed by its terms and as disclosed by their own testimony, in order to include property which had already been disposed of, and which, at the time the contract was entered into, none of the parties had even the remotest idea was included therein. Throughout the negotiations and the legal proceedings leading up to the consummation of the contract out of which this litigation arises, both sides were represented by able counsel. Yet there isn't the slightest indication in the contract, or any of the proceedings in or out of court, that the parties had in mind, when the contract was drawn, the matters which counsel for appellants at the trial below sought, by persistent, leading questions, calling for incompetent testimony, to inject into the case as being the understanding and agreement of the parties to the contract. Not only is there an

entire absence of any reference to such matter in the contract, but the prior negotiations, the positive record evidence as disclosed by solemn court records, and the undisputed acts and conduct of the appellants themselves in their capacity as executors of the estate, as well as their own testimony, tend strongly to refute their present contentions in reference to this matter.

The decree of the trial court is so manifestly right, just and proper that any extended reference to the facts or discussion of the legal principles involved would be a waste of time and space and serve no useful purpose. The contract by its express language purports to include only land belonging to the estate "which has not heretofore been conveyed and now owned by the parties hereto." If the contracting parties intended to include these two tracts which had been previously sold under written contracts joined in by both parties, there was no necessity for including the foregoing clause limiting the sale to real estate "which has not heretofore been conveyed," for no other real estate had been conveyed. It not only limits the application of the contract to land not heretofore conveyed, but also to land "now owned by the parties." Furthermore, after this contract in the instant case was executed, a dispute arose over the title to one of these tracts which had been sold and these very appellants as executors of the estate obtained an order of court correcting said error and ordering the proceeds from the sale of said tract paid in three equal parts to the appellee and appellants, respectively, thus recognizing and confirming the sale. Much more could be gleaned from the record pointing in the same direction in sustaining the trial court's conclusion as to this matter.

■■■ Complaint is made because the court overruled the defendants' motion to transfer the case to the law calendar. There is no merit in such complaint. Equity is the proper forum in which to bring actions for specific performance of real estate contracts. The fact that this contract also included personal property including bonds and mortgages and some livestock does not oust equity of jurisdiction or require a transfer to the law docket. When equity has once obtained jurisdiction of a controversy, it will retain it and determine all questions necessary to the accomplishment of full and complete justice between the parties, even though in doing so it may be required to pass upon some matters originally cognizable at law. Reiger v. Turley,

151 Iowa 491, 498, 131 N. W. 866. So held in the case of Leach v. Fobes, 11 Gray (Mass.) 506, 71 Am. Dec. 732, wherein the plaintiff obtained a decree for specific performance of contract to convey land and transfer shares of stock.

There can be no basis for the claim of lack of mutuality. The contract contains an express obligation on the part of one to sell and the other to buy at a specified fixed price the appellee's one-third interest in all the property owned by the estate of T. O. Stewart. It was equally binding on both parties and enforceable by either party against the other. Wickham & Burton Coal Co. v. Farmers Lumber Co., 189 Iowa 1183, 179 N. W. 417, 14 A. L. R. 1293.

Since the contract is one which the vendee might enforce in equity and compel a delivery of a deed, the vendor is recognized as having the same right even though his demand is in substance to recover money for breach of contract. This was one entire contract for a lump sum, and where part of an entire contract relates to personal property and the rest to land "specific performance may be had of the contract as a whole, including the clause relating to personal property." Kipp v. Laun et al., 146 Wis. 591, 603, 131 N. W. 418, 422. Furthermore, at the time the court ruled on the motion to transfer to the law docket, there was a cross-petition of the appellants on file asking for specific performance of the contract as they claimed it to be. This in and of itself is sufficient reason for overruling the motion.

■■■ Complaint is also made because there was no formal tender of deeds to the land or assignments of the personal property, bonds, and mortgages before this suit was started. No such tender is necessary in an equity case for specific performance. This has been the law in this state since a very early date. In 1861 this court said:

"A vendor of real estate who seeks a specific performance and foreclosure of a contract containing mutual and dependent covenants, is not required, as at law, to tender a deed to the vendee before filing his bill. * * * In equity the chancellor has full power to protect the vendee." Rutherford v. Haven & Co., 11 Iowa 587, 588, opinion by Wright, J.

"A delivery or tender of a deed, before bringing suit in equity for the purchase money and foreclosure of the lien there-

for, or other equitable relief, is not necessary.'' Winton v. Sherman, 20 Iowa 295, 297, opinion by Cole, J.

''A court of equity can order the execution of the deed upon the payment of the money.'' Montgomery v. Gibbs, 40 Iowa 652, 657.

There is also a line of cases in this state holding that the vendor in a contract specifically requiring the vendee to first pay before getting deed need only get himself in readiness to perform and need make no tender until payment is made or offered by the vendee, and the vendor is not in default until this is done. Foft v. Page, 215 Iowa 387, 245 N. W. 312, and cases cited. This rule is applicable to the contract here involved. The receiver was an officer of the court and under its direction, and could only act under the authority of the Comptroller of the Currency and the orders of the court, and he was only authorized to deliver the deed upon payment of the purchase price, and this contract specifically so provides, ''upon the payment of the full amount of the purchase price agreed to be paid by the parties of the second part to the party of the first part, for his interest in said property, the party of the first part shall execute and deliver,'' assignments, deeds, etc.

The evidence shows the appellee was at all times ready, able, and willing to perform, he had obtained all orders necessary to give him full and complete authority to carry out the contract, the deeds were all executed, ready to deliver, and he was in the act of preparing the assignments on the day the deal was to be closed when the appellants announced they would not go ahead with it unless the money received by the receiver from the sale of the two tracts heretofore mentioned was credited or turned over to appellants. There was a tender of performance in the pleadings. Also shortly after the 1st of March, 1937, the day the contract was to be consummated, there was a meeting of all the parties, and their attorneys, and again a tender of performance was made, but again appellants refused to perform according to the terms of the contract. At the trial below, on the witness stand, a full performance was tendered, deeds and assignments were executed and offered in evidence, and tendered to appellants upon payment of the balance due under the contract. This is all the law requires in an equity case. Indeed, no tender is necessary before bringing suit in any case where

the other party refuses to comply or places himself in a position where it is impossible for him to perform. This is elementary. But see Conner v. Baxter, 124 Iowa 219, 99 N. W. 726; 79 A. L. R. 1245, note. True, the assignments of mortgages were in blank; the appellants being in possession of the original mortgages, appellee was unable to fill in the exact description of each mortgage. It was within the power of the court to fully protect the parties, as was amply done in the decree. Appellants are in no position in a court of equity to complain because of indefiniteness of description of the property. The sale was of an undivided interest in property in their possession as executors, the other two-thirds of which they were the owners in their individual capacities. There is no claim that they did not know of every item of property referred to or covered by the contract. There is not the slightest question that the receiver was ready, able, and willing to carry out the contract on his part upon payment of the money due him. There is no question that the appellants refused to perform before this suit was started. W. W. Stewart, who seemed to be the spokesman for himself and sister, testified:

"I told him (Utterback) I was ready for him to turn over the money he got from the Fritzler farm. He said he wouldn't do that. I said I wouldn't perform the contract unless he did do that and I meant that. I meant to have him understand that in addition to making those deeds and assignments that he would turn over some money or I wouldn't perform the contract."

Plainly, this amounted to an absolute refusal to perform the contract and a demand of something not included therein.

■■■ The appellants also complain because the court granted appellee a vendor's lien. There was a prayer for general equitable relief, and under this broad general prayer the court was warranted in granting the appellee a vendor's lien and ordering sale under special execution of the one-third interest agreed to be conveyed by appellee to appellants and general execution for any deficiency. Loveridge v. Shurtz, 111 Mich. 618, 70 N. W. 132.

Other matters urged in argument have been carefully considered, and we reach the conclusion that they are devoid of merit. On the whole record we are satisfied that the decree of the trial court metes out complete justice in accordance with

the plain intent of the contract, and in accordance with the manifest understanding of the parties at the time the contract was entered into. The decree of the trial court is accordingly affirmed.

 The appellee filed motion to strike the reply of the appellants to the opening argument of the appellee. This was an equity case and the appellee had the burden and was entitled to file the first argument. This he expressly waived, and the appellants made the first argument, and to this argument the appellee was entitled to reply, which he did, and so designated his argument. Under the rules of this court the appellants were not entitled to file a reply to the appellee's reply argument. See In re Rinard's Estate, 224 Iowa 100, 275 N. W. 485; Rule 24. Appellants' motion to strike is sustained.—Affirmed.