E. E. CALBREATH, appellant, v. JOHN BORCHERT et ux., appellees.

No. 49124.

(Reported in 81 N.W.2d 433)

MARCH 5, 1957.

Johnston & Miles, of Corydon, for appellant.

R. B. Hawkins, of Leon, for appellees.

HAYS, J.—This being an equitable proceeding the same is here heard de novo, and, while the findings of the trial court are given weight, they do not, as in a law action, have the force and effect of a verdict and are not conclusive on appeal. After a careful consideration of the record we are unable to agree with the trial court as to the facts or the conclusion reached.

The case involves a sale of two business properties in the town of Lineville, Iowa. The particular property at issue here was owned by the defendants, Borcherts, who are residents of, and in business at, Lineville. The other property was owned by one E. E. Stacy, a resident of Princeton, Missouri. Calbreath, plaintiff herein, is a resident of Chillicothe, Missouri. In 1954 the plaintiff obtained an agreement from Stacy that Stacy would sell his property for $3500 cash, with possession to be given September 1. Plaintiff then made an agreement with Borchert that Borchert would pay $3000 in cash and a deed to his property for the Stacy property. Both deeds and cash were to be deposited with one R. C. Anderson, cashier of the bank at Lineville. Whether the Stacy deed was to be blank as to the grantee is not clear, but it is conceded by all parties that the Borchert deed was to be blank as to the grantee and was to be delivered to Anderson for Calbreath. At the same time Calbreath arranged with Anderson that when the deeds were delivered to him at the bank, he, Anderson, was to pay Stacy $500, which, with the Borchert $3000 would be the amount Stacy was to receive. To insure this $500 payment, Calbreath's account was credited with $500 and for which Calbreath gave the bank his note. At this stage of the proceedings there had been no contact between Stacy

and Borchert, each having dealt solely with Calbreath, and neither knew of the Calbreath-Anderson arrangement as to the $500 payment.

Sometime about the middle of August Stacy left his executed deed with Anderson. Later, but before time for final settlement, Stacy came to the bank and wanted a down payment of $500, which Anderson gave him, paying it with his personal check. On August 31 the Borcherts delivered their deed, executed in blank as to the grantee and acknowledged before Anderson, to Anderson to be delivered to Calbreath. They also left their check for $2500, payable to Stacy. On September 1 Stacy came to the bank for his $3500. Anderson called Borchert to the bank, where he first learned Stacy was not getting the building but wanted $3500 cash. At this time Borchert gave Stacy his check for $500 marked "balance on property" and received the Stacy deed. That evening Mrs. Borchert had a conference with Anderson at his home at which time he told her she could get back their deed if she called at the bank. On September 2 she went to the bank and Anderson gave her the deed, which she destroyed. She testified Anderson told her "he couldn't see why we should have to give a deed of the property away when we had already paid what Stacy was asking for the building." Thereafter it appears that Calbreath's $500 was charged back against his account. None of the above proceedings of August 31 to September 2 was known to Calbreath until sometime later. The Borcherts are now in possession of, and hold the record title to, both properties.

Plaintiff commenced this action in which he asks a mandatory injunction requiring the defendants, Borcherts, to execute and deliver to him their deed, blank as to the grantee, for the property in question. The petition states he has been at all times and is now able and willing to reimburse defendants for the additional $500 paid by them, less an accounting of taxes, insurance, interest and rentals since September 1, 1954. Defendants' answer asserts a failure of consideration, and by cross-petition they ask damages on account of plaintiff's interference with their possession of their property. The trial court dismissed plaintiff's petition. Plaintiff appeals.

■ Defendants contend a mandatory injunction prayed for by plaintiff is a relief unknown to the law. While we do not fully agree as to this contention, it is of no importance. General equitable relief was prayed and the rule is that under such a prayer it is the pleadings and proof that determine the relief, even though it be inconsistent with the specific relief prayed for. Newman v. French, 138 Iowa 482, 116 N.W. 468, 18 L. R. A., N. S., 218, 128 Am. St. Rep. 212; McAnulty v. Peisen, 208 Iowa 625, 226 N.W. 144; Utterback v. Stewart, 224 Iowa 1135, 277 N.W. 735.

Appellant presents but one proposition: That this was a completed transaction and that the title to the Borchert real estate vested in him at the time the deed was delivered to the agent, R. C. Anderson.

■■ The law is well settled that delivery of a deed to a third party is sufficient to pass the title if made for, and on behalf of, the grantee to one not acting solely as grantor's agent with express or implied instructions to the depositary to deliver the deed to the grantee. Criswell v. Criswell, 138 Iowa 607, 116 N.W. 713; McKemey v. Ketchum, 188 Iowa 1081, 175 N.W. 325; In re Estate of Andrews, 245 Iowa 819, 64 N.W.2d 261; 26 C. J. S., Deeds, sections 43(b) and 53. It is equally well established that where a delivery has been properly made to a third person for grantee, it cannot be defeated by the loss or destruction of the deed while in the hands of the third person, or by the grantor's change of intention or mere repossession of the deed. Blaney v. Hanks, 14 Iowa 400; Matheson v. Matheson, 139 Iowa 511, 117 N.W. 755, 18 L. R. A., N. S., 1167; Wilder v. Conlon, 239 Iowa 187, 30 N.W.2d 764; 26 C. J. S., Deeds, sections 42(b), 43(c), 172, 173 and 174.

It is conceded by the Borcherts and by Anderson that the duly executed deed to the Borchert property was delivered to Anderson *to be given to Calbreath*. It is nowhere claimed that Anderson was acting as the Borcherts' agent, at least at the time the deed was given to Anderson. While no apparent restrictions or conditions were attached to this delivery to Anderson, we think it fair to assume it was conditioned upon the delivery of the Stacy deed to the Borcherts. This they received on September 1.

The defendants contend there was a failure of consideration, i.e., availability of the Stacy deed at the time they delivered their deed and made their required $3000 payment; that they were forced to pay an additional $500 to obtain it, and hence the condition of the delivery of the deed to Anderson for Calbreath had not been met. We think a fair appraisal of the record belies such a situation.

The facts heretofore set forth are not in dispute. The crux of the case centers around the $500 payment made by Anderson. The fact that ultimately it was paid by Borchert, as all agree was done, is not determinative. Anderson first testified that Calbreath left the $500 for him to pay Stacy and this he said he did. It is clear $500 was paid to Stacy prior to August 31. Anderson then became, to say the least, a very evasive witness. With reference to the $500 payment he states:

"Q. You stated before that it was Calbreath's $500 that was paid to Stacy. What does your refreshment show to you now? A. It seems that that was—I went down (this was September 1) and got John, and he was working on some plumbing— Q. Who is John? A. John Borchert, and we put that all in another note or two and that come off of John, paying Stacy the $3500."

As to the $500 payment, Borchert testified that when he and Calbreath talked with Anderson before there was a final agreement between the two, arrangement was made for Anderson to make a down payment of $500 to hold the deal. Anderson makes no reference to any agreement for down payment other than Calbreath's $500. With reference to when the note for $500 was given to Anderson he testified, "I heard Mr. Calbreath testify about the first $500 that was paid. Mr. Anderson paid it. He wrote the check for it, but I paid it. I don't know when I paid it. I don't know approximately when I paid it. I paid it by signing a note."

On September 1 Borchert gave a check for $500 payable to Stacy, which completed the $3500 for the Stacy property. These payments consisted of the $500 paid by Anderson's check, which was in exact accord with the Anderson-Calbreath agreement, the $2500 Borchert check on August 31, and the $500 check to Stacy on September 1. While the record is somewhat confusing as to when Borchert became liable for the $500 paid

by Anderson's check, it seems clear that such did not occur prior to the Stacy-Borchert meeting on September 1. We think the record shows that due to collusion between Anderson and the Borcherts the $500 paid by Anderson, as instructed by Calbreath, was paid by Borchert in order that he might retain his property. What started as a Calbreath payment ended as a Borchert payment. This view is strengthened by the fact that the idea of the destruction of the Borchert deed originated with Anderson. As the fruit of this collusion Borchert now seeks to profit by placing Calbreath in the position of one who is unable to perform. Such a situation does not appeal to the conscience of the Chancellor.

We think equitable title to the Borchert property passed to Calbreath, if not on August 31, at least on September 1, when Borchert received the Stacy deed; that Calbreath was entitled to the possession thereof, subject to a $500 payment to Borchert. The record shows that since Calbreath left the $500 with Anderson to be paid to Stacy, he, Calbreath, has been ready, able and willing to make such payment.

There is testimony to the effect that Calbreath, by having the Borchert deed blank as to the grantee, intended to name as grantee someone as a trustee for a cemetery association. Defendants contend Calbreath had no interest therein and that the cemetery association was not a party to the action. The record is clear that at the time the Calbreath-Borchert agreement was made, and at the time the Borchert deed was left at the bank, there was no mention of any trusteeship and Borchert gave his deed *to be delivered* to Calbreath with it blank as to a grantee. As between Calbreath and Borchert we find this matter of trusteeship to be immaterial.

We hold plaintiff is entitled under the pleadings and proof to a decree that the Borcherts specifically perform their agreement by executing and delivering to Calbreath their warranty deed to the property in question, the deed to be blank as to the grantee, subject to an accounting as hereinafter stated.

Calbreath tenders $500 into court to be paid to Borchert, subject to an accounting by Borchert for the rental value of the premises during the time he was deprived of possession. There is some evidence as to this value. There is also some evidence

that, during the time in question, Borcherts have made improvements on the property which will inure to Calbreath's benefit. There should be an accounting between the parties with Borchert entitled to the balance, if any, of the $500; if Borchert should be indebted beyond the $500, Calbreath to have judgment therefor. See 81 C. J. S., Specific Performance, sections 162d(1) and 166(d); Brown v. Ward, 110 Iowa 123, 81 N.W. 247; Blankenhorn v. Edgar, 193 Iowa 184, 190, 186 N.W. 893; Mitchell v. Mutch, 189 Iowa 1150, 179 N.W. 440.

Cause reversed and remanded for an accounting and decree in accord herewith.—Reversed and remanded.

All JUSTICES concur.