T. M. CONNER, Appellee, v. CHARLES BAXTER, Appellant.

**Specific performance:** REFORMATION OF CONTRACT. The vendee, in a
1  contract for the sale of land purporting to bind the vendor to a
conveyance simply of his interest, is entitled to a reformation of
the contract, to meet the real intention of the parties to embrace
the entire property, including the interest of a co-tenant which he
had no power to convey.

**Pleadings:** SUFFICIENCY. A pleading which directs the attention of
2  the court with reasonable certainty to the facts upon which the
prayer for relief is based, is ordinarily sufficient, although the alle-
gations may be hypothetical in form.

**Decree:** WHAT INCLUDED. In an action for specific performance, a
3  decree finding that plaintiff is entitled to the relief demanded and
that defendant is unable to perform, which then proceeds to assess
a money judgment, includes the granting of a prayer for reforma-
tion of the contract.

**Contracts:** MUTUALITY. Where the vendor of land under a contract
4  made by an agent, upon being advised of the terms of sale, receives
and retains an advance payment and signs the contract, the same
is enforceable, though the agency may have been terminated.

**Reformation:** EVIDENCE. Where the writing does not express the real understanding of the parties, it may, be reformed. Evidence considered and held to authorize the reformation of a contract for the sale of land.

**Recovery of damages:** TENDER. Where a vendor cannot perform his contract for the sale of land, a vendee may recover his damage without a tender of payments required by the contract.

**Damages:** EVIDENCE. In an action for specific performance of a contract for the sale of land, where the vendor was unable to convey, the evidence as to the value of the contract is considered, and held to entitle plaintiff to a judgment for $800.00 damages.

*Appeal from Calhoun District Court.*—HON. Z. A. CHURCH, Judge.

THURSDAY, MAY 12, 1904.

ACTION in equity to enforce specific performance of contract to convey land. Judgment for plaintiff for damages, and defendant appeals. *Modified* and *affirmed.*

*Healy Bros. & Kelleher* and *D. D. Murphy,* for appellant.

*E. C. Stevenson,* for appellee.

WEAVER, J.—Under date of October 1, 1901, the defendant, by an instrument in writing, appointed one McDermott his agent " to sell the following described property: the north half of section 9, township 86, Calhoun county, Iowa, at $62.50," upon terms of payment therein stipulated. Defendant also by the same writing authorized McDermott in his name to enter into a written contract for the sale of said property, and agreed to furnish an abstract showing good title to the land, and to make warranty deed of conveyance to any buyer whom the agent might produce upon the authorized terms. On November 8, 1901, McDermott, having had some negotiations with the plaintiff, telegraphed to defendant: " Can sell farm at sixty per acre. One thousand cash.

Seven thousand Feby. 1st, 1902. Balance as per contract"
— to which communication defendant responded: "Accept
sixty net to me. Try and do better. Wire." Upon receipt
of this reply, McDermott, in defendant's name, entered into
a contract with plaintiff, which agreement is the principal,
subject of the present controversy.

The contract is partly in print and partly in writing,
and the portion most material to our present consideration is
as follows: "This agreement made this 18th day of No-
vember, 1901, between Charles Baxter of the county of Alla-
makee, and State of Iowa, party of the first part, and F. M.
Conner of the county of McLean, and State of Illinois, party
of the second part, as follows: The party of the first part
hereby agrees to sell to the party of the second part on per-
formance of the agreements of party of second part, as here-
inafter mentioned, all his right, title and interest in and to
the real estate situated in county of Calhoun, in the State of
Iowa, to wit: All of north one-half of section nine (9), town-
ship eighty-six (86), range thirty-two (32), west of the 5th
P. M., Iowa, containing three hundred and twenty acres
(320), more or less, according to government survey, for the
sum of nineteen thousand two hundred dollars ($19,200),
payable as hereinafter mentioned, and the said party of the
second part in consideration of premises hereby agrees to and
with the party of the first part to purchase all his right, title
and interest in and to the real estate above described, for $19,-
200, and to pay to the party of the first part, his heirs or as-
signs, as follows: $1,000 on execution of this agreement,
and the balance of the $18,200 as follows, to wit: The sec-
ond party to pay $7,000 on Feb. 1, 1902, and the first party
agrees to make warranty deed to the party of the second part
on Feb. 1, 1902, and also agrees to furnish abstract at that
time showing good title. Second party agrees to give first
party a mortgage back on said land for $11,200 to be paid on
or before 10 years from Feb. 1, 1902."

The foregoing description of the land and the terms of

payment are in writing, while the body of the agreement is a printed form, such, apparently, as the agent used in his business. Upon the signing of the contract, plaintiff paid McDermott $1,000 for the defendant, and, in addition thereto, an agent's commission of fifty cents per acre. On the following day the latter sent draft for the $1,000 to defendant, advising him of the making of the contract and of its substance. On November 20, 1901, defendant, by letter, acknowledged receipt of the draft, saying: "It was a fair sale, but the land is worth it, and more, too, or will be soon. I shall be pleased if you will inform me if there is any probability of his making any other payments inside of one year." Soon after receiving the letter, McDermott wrote defendant, suggesting that he forward abstract at once, in order that, if any defect appeared in the title, it could be remedied before February 1, 1902, when the conveyance was to be made; and on December 30, 1901, defendant notified McDermott that he had sent the abstract direct to plaintiff in Illinois. It would seem that the abstract thus sent had not been brought down to date, and plaintiff returned it to defendant, requesting that it be completed. On January 16, 1902, plaintiff again wrote defendant, calling his attention to the delay in the matter of the abstract, and on January 20, 1902, the latter replied, saying, "Will have abstract attended to." On February 4, 1902, plaintiff once more wrote defendant, asking in regard to the matter, requesting that the abstract be sent to his attorneys at Leroy, Ill., and expressing his readiness to settle at any time defendant would get the abstract ready. Defendant did not reply to this letter until February 15, 1902, when he wrote as follows: "F. M. Conner, Lohrville, Iowa — Dear Sir: Yours as to land contract has just reached me. As you did not comply with the terms of the contract and did not pay or offer to pay the amount due on February 1st at the place where same was payable, I took it for granted that you had dropped the deal. I will return you your $1,000 paid me. In addition I can't carry out the

contract, as the deed under which I hold the land provides that I can't sell or encumber the land without the consent of my co-owner and that consent I can't get. As a matter of law my contract with you is absolutely void. Where do you want me to send the $1,000 you paid? (Signed) Chas. Baxter." Thereafter, on February 26, 1902, this action was begun to enforce specific performance, and asking that, in case such performance could not be had, plaintiff be allowed to recover damages.

By way of answer to this demand the defendant denies the agent's authority to make the contract, and denies that plaintiff has performed or tendered performance of the same on his part. It is further alleged that at the time of the making of said contract, the land was owned by the defendant and his mother as tenants in common, subject to a condition by which neither of said tenants was authorized to sell or incumber said land without the consent of the other, and that his said co-tenant refused to consent to or to ratify or to be bound by the alleged sale made by McDermott. It is also said that the extent of his ownership in the land and the limitation upon his authority to sell was well known to McDermott and the plaintiff, and, furthermore, that the contract as made binds the defendant to sell and convey only his actual title and interest in the land, a conveyance of which the plaintiff refuses to accept. Defendant admits receiving the payment of $1,000, but alleges his readiness to repay the same, and brings it into court for the plaintiff's use. Upon the filing of said answer plaintiff amended his petition, alleging that after the written contract was entered into by McDermott defendant ratified the same by personally signing it. The prayer for relief was also amended by asking that the contract be so reformed as to express the defendant's alleged agreement to convey the entire half section of land.

After hearing the evidence, the trial court entered a decree finding and adjudging among other things as follows: " (2) That the allegations of the petition and amendment

thereto filed herein are true, and that all the equities of this action are with the plaintiff, and the plaintiff is entitled to the relief as prayed. (3) That the plaintiff is entitled to a specific performance of the contract for the sale of the real estate described in his petition, but, defendant being unable to perform said contract on his part, a money judgment for the damages should be entered for the plaintiff, he electing to take a money judgment therefor. It is therefore ordered, adjudged, and decreed by the court that the plaintiff, F. M. Conner, have and recover of and from the defendant, Charles Baxter, the sum of four thousand five hundred ninety-six dollars and twenty cents ($4,596.20), to draw interest at the rate of six per cent. per annum from this date, to wit, November 5, 1902, together with the costs of this action."

I.   The foregoing outline of facts renders unnecessary any extended discussion as to the intent and purpose of the parties to the contract. Unless we are bound by some imperative rule of law to exclude from our consideration the undisputed circumstances attending this transaction, it would manifest a marked lack of candor to say that the parties, in entering into this agreement, attempted no more than to bind the defendant to sell and convey an undivided half interest in the land. Indeed, we do not understand appellant to so argue unless we are required to confine ourselves to a simple interpretation of the writing as made without reference to extrinsic facts and circumstances. The defendant himself as a witness clearly concedes that he supposed he was making a sale of the entire property. While on direct examination he seeks to say that in signing the contract he intended to dispose of no more than his undivided interest, he also says upon cross-examination concerning the contract of agency: "I expected McDermott to sell the entire half section for $62.50, and to take one dollar an acre commission, and I and my mother could divide the balance. When I signed the contract I presumed I could get the consent of my mother to the transfer." This is undoubtedly the

1. REFORMATION OF CONTRACTS.

truth, and it was upon his confidence in the willingness of his mother to join in the deed that he assumed the responsibility of entering into the contract. We can agree with counsel that the writing, interpreted according to its literal terms, binds the defendant to no more than the conveyance of his actual interest in the land; but we cannot agree that under the issues joined, and the evidence as a whole, we are thus narrowly limited.

Plaintiff alleges the real intent of the parties to make a sale of the entire property, and asks to have the contract reformed accordingly. It is to be admitted that the allegation is stated in a hypothetical form, which is a manner of pleading not to be approved, and there is good authority for saying that, had the court seen fit to refuse to hear evidence upon such allegation, the ruling would not have been erroneous. *Cassidy v. Farrell,* 109 Mass. 397; *Starbuck v. Dunklee,* 10 Minn. 168 (Gil. 136), (88 Am. Dec. 68). But it is to be remembered that in this State we have wandered far from the strict rules of pleading formerly observed, and allegations which direct the attention of the court with reasonable certainty to the facts upon which the prayer for relief is based are ordinarily held sufficient. Nor are our decisions wanting in precedents where a pleading substantially like the one under consideration has been held sufficiently formal to justify the court in enforcing a contract according to the true intent of the parties, rather than the literal terms of the writing. *Hanna v. Wright,* 116 Iowa, 275.

**2. PLEADINGS: sufficiency.**

It is insisted for appellant that the trial court denied the prayer for a reformation of the contract, and, as plaintiff has not appealed, we must rely solely upon the writing as made for the terms of the agreement. The record does not bear out the claim thus stated. The decree appealed from is perhaps not so full or so formal as it might have been framed, but, as we have seen, it expressly finds plaintiff entitled to the relief demand-

**3. DECREE: what included.**

ed, which, of necessity, includes the prayer for a reforma-; tion of the contract; and, finding further that defendant was, unable to carry out his agreement, the court proceeds to assess a money judgment for damages. So far from being a denial of the right to a reformation of the writing, it is an affirmance of such right. After stating its conclusion that plaintiff was entitled to such relief, we think the court was not required to proceed to a formal and express decree of reformation as a preliminary to the entry of judgment for damages. That the court was right in finding the contract did not express the intent of the parties is too clear for controversy, and, such being the case, the writing should have been reformed, if such remedy be available under our procedure. Whatever may be the holdings in other jurisdictions, the courts of this State have not hesitated, to reform contracts, not only where mistakes of fact are clearly established, but also where by mistake as to the legal effect of the language employed the real intent of the parties is not expressed. *Ring v. Ashworth,* 3 Iowa, 438; *Hausbrandt v. Hofler,* 117 Iowa, 105; *Stafford v. Fetters,* 55 Iowa, 484; *Hopwood v. McCausland,* 120 Iowa, 218; *Lee v. Percival,* 85 Iowa, 639. We see no reason for excepting the case at bar from the rule approved in the decisions here cited.

It is argued, however, that the written contract of agency was abandoned when McDermott was authorized to sell for $60 per acre net, and to take a commission from the pur-

4. CONTRACTS: mutuality.

chaser, because the effect of such changed relations was to make McDermott the agent of plaintiff in the transaction, and there is no evidence of an agreement or meeting of the minds of the parties after that date upon the terms and conditions of the sale. Without conceding the correctness of the proposition that the written authority to McDermott was terminated by the subsequent correspondence between him and defendant, it seems to us clear, even if such were the case, the contract is enforceable. Defendant was notified of the terms of the

sale, and received and retained the advance payment.   Later he went to the bank where the contract was deposited, and attached his name thereto, thus eliminating any possible question as to the agent's authority.   He tolled the plaintiff along for a period of more than two months with assurances that the promised showing of title would be attended to, and not until two weeks after the time fixed for making the deed did he give any intimation that the sale would not be consummated according to its terms.   Even then he made no claim that the terms of the agreement had not been fully settled upon, but distinctly recognized the fact that a contract had been entered into; saying, "As you did not comply with the terms of the contract, and did not pay or offer to pay the amount due on February 1st at the place where the same was payable, I took it for granted you had dropped the deal."   This letter bears unmistakable evidence of having been written by defendant after taking legal advice, and up to that time, at least, it had not occurred to him or his counsel that no contract had in fact been made.

We cannot stop to review or to speak in detail of the many authorities cited by counsel upon this feature of the case.   When reduced to a statement of principle, it is, in **5. REFORMATION:** effect, that to call the equitable remedy of refor- **evidence.** mation into activity where no element of fraud exists, it must appear that there is a mutual mistake; that is, there must have been a meeting of the minds, an agreement actually entered into, but the written contract, deed, or other instrument by which the same is evidenced does not express what was really intended by the parties thereto.   Pomeroy's Equity Jurisprudence, section 1376; Tiedeman's Equity Jurisprudence, section 507.   It would be difficult to find a case to which that rule more aptly applies than the one at bar.   Defendant unquestionably did assume to sell the entire half section of land.   We may concede that he then believed in good faith that he could make the title, but that is not a material consideration.   Plaintiff understood, and

had the right to understand, that he was buying the entire property. The price was agreed upon, as well as the terms of payment. An advance payment was made. There was nothing left to do save for the defendant to make the promised title, and receive the remainder of the cash payment and securities. He has failed to perform, and plaintiff is entitled to recover his damages, unless the use of the words " all my right, title, and interest " in the printed blank on which the contract was written affords him a door of escape. As already stated, we are confident that these words do not express the agreement or intent of the parties, and we are not inclined to indulge in any excessive refinement of reason- ing to relieve him from liability.

II.   The point is made that plaintiff himself is in de- fault for want of payment or tender of the payment which was to be made on the delivery of the deed.   This contention

is without merit.   Defendant concedes that his

**6. RECOVERY OF DAMAGES: tender.**

mother refused to ratify the sale, or unite with him in making the conveyance.   In other words he concedes that he was, and has been at all times, wholly without power to perform his contract, and that a tender would not have enabled him to make the promised convey- ance without suit or cost.   Under such circumstances the court will not require the idle ceremony of a tender as a condition precedent to the granting of relief to the buyer. *Veeder v. McMurray,* 70 Iowa, 121; *Auxier v. Taylor,* 102 Iowa, 675.   This rule is not founded on the doctrine of waiver, which must be pleaded to entitle the buyer to rely thereon.   Plaintiff pleads a performance of the contract on his part, and the allegation is sufficiently sustained by show- ing that he has done all that equity requires at his hands. Plaintiff did notify defendant in writing within three days of the maturity of the contract of his readiness to close the deal, and the delay caused by the defendant's own failure to make showing of title and his self-confessed inability to per- form his contract will not avail him as a defense.   Plaintiff

was not required to make payment or tender, not because it was waived or excused by the defendant, but because, the defendant being without the power to make the conveyance, no further performance was required at plaintiff's hands to mature his right of action.

III.   We turn now to the assessment of damages made by the trial court.   We have examined the record with care, and after due deliberation conclude that the judgment is

7. Damages: excessive.   The defendant is not in position to
evidence.   command special sympathy upon the merits of the case, but that fact should not be allowed to enlarge the damages recoverable by the plaintiff.   If there was a margin of profit in the contract — that is, if the fair market value of the land on February 1, 1902, was in excess of the agreed price of $60 per acre — then that profit, and no more (added to the $1,000 paid upon the purchase price), is the amount for which plaintiff was entitled to judgment.   The testimony as to the value of the land at the date of the contract varies from $60 to $70 per acre, but, in view of the entire record, we think it reasonably certain that $60 per acre represented its fair selling value at that time.   It also quite clearly appears that during the year following the date of the contract a very perceptible advance — probably from $5 to $10 per acre — was attained in the market value of this and other similar lands in that vicinity.   How much of this advance had accrued on February 1, 1902, is quite problematical.   The witnesses on both sides, when brought from estimates to concrete facts, unite in saying that from November, 1901, to the spring of 1902, there were practically no sales of land, and that the transactions showing marked increase of values took place from April or May onward through the season.   It is a very significant fact upon the question of market values that immediately after the contract of November 18, 1901, plaintiff relisted the land for sale with McDermott at a net price of $64 per acre, and, although the latter says he had made diligent effort to secure a pur-

chaser, he was unable to do so, and had in fact received no offers at any figure up to February 1, 1902. In the absence of evidence of sales during the period in question, we look not only to the estimates of witnesses, but to sales made at earlier and later periods; and, after giving due weight to all the facts and circumstances revealed in the evidence, we think that a margin of $2.50 per acre amply covers all the profit which was lost to the plaintiff by defendant's failure to make title to the land as agreed. This margin, aggregating $800, added to the $1,000 advance payment, with interest thereon from February 1, 1902, should, we think, be the limit of the plaintiff's recovery, and, as thus modified, the judgment appealed from will be affirmed. The costs of the appeal will be taxed one-half to the appellee and one-half to the appellant.— MODIFIED and AFFIRMED.