## COMMERCIAL CASUALTY INS. CO. v. LAWHEAD.
### No. 3360.

Circuit Court of Appeals, Fourth Circuit.
Jan. 10, 1933.

**PARKER**, Circuit Judge.

This is the second appeal in a suit instituted against the Commercial Casualty Insurance Company to recover on a bond executed to guarantee a deposit made by the Clarksburg Trust Company of Clarksburg, W. Va., in the Fayette City National Bank of Fayette City, Pa. For convenience we shall refer to the trust company as complainant, to the insurance company as the defendant, and to the Fayette City National Bank as the bank. The suit was originally instituted as an action at law, and verdict was directed for defendant. Upon appeal to this court, complainant contended that, even if not entitled to recover on the bond as executed, it was entitled to have it reformed in equity, and to recover on it as reformed. We held that complainant was not entitled to recover at law, but that mutual mistake in the execution of the bond was sufficiently alleged in the pleadings and supported by the proofs to justify transferring the cause to equity. We remanded it, therefore, with directions that the judgment in favor of defendant be set aside and that it be transferred to equity, with leave to both sides to amend their pleadings and introduce further evidence. Our opinion remanding the case dealt fully with the equitable principles applicable. See Clarksburg Trust Co. v. Commercial Casualty Ins. Co. (C. C. A. 4th) 40 F.(2d) 626.

After the remand the pleadings were amended and additional proofs were taken in the court below. It appeared beyond controversy that the bond sued on was executed to secure a deposit to be made by complainant in the bank; that no deposit was made or contemplated except the deposit of $20,000 made on October 6, 1925, for which a certificate of deposit was issued payable July 1, 1926; that on that date complainant agreed to leave the deposit with the bank for another year, and a certificate of deposit was accordingly issued payable July 1, 1927, and the bond was renewed; that while the bond as executed covers deposits in an account subject to check, the application therefor states that the deposit to be secured was to bear interest at the rate of 4 per cent., and shows that this rate of interest was paid only on time certificates and savings deposits; that, although this application was received by defendant after the execution of the original bond, no protest or inquiry was made either at the time of its receipt or when renewal was granted; and that, if the bond does not secure this deposit, it has never secured anything, and defendant has received the premium on the bond for nothing.

Mason G. Ambler and James S. McCluer, both of Parkersburg, W. Va. (L. H. Adams, of Newark, N. J., and B. M. Ambler and Fred L. Davis, both of Parkersburg, W. Va., on the brief), for appellant.

James M. Guiher, George M. Hoffheimer, Hoffheimer & Stotler, and Steptoe & Johnson, all of Clarksburg, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

There can be no doubt but that both the complainant and the bank intended and understood that the bond as executed guaranteed the certificate of deposit; and we think that the same is true of the defendant. The bond was executed for defendant by the Hagey H. Campbell Company, whose treasurer was the vice president actively in charge of the bank. This treasurer, who secured the bond for the bank, had no reason to conceal or misrepresent the nature of the deposit which was being guaranteed, and it is not likely that he failed to disclose exactly what it was that the defendant was to guarantee. But we base our conclusion not upon this inference, but upon the positive testimony of complainant's president, who says that, when the bond was received by him, he noticed that neither the date of incidence nor of expiration corresponded with the dates borne by the certificate of deposit to be issued to plaintiff; that he thereupon called the agency which issued the bond and was assured that it was in proper form to guarantee a time certificate of deposit and in the form always used by defendant for that purpose. He testifies further that, upon his insistence, the bond was returned to be corrected so that its date of expiration would correspond with the maturity of the certificate, and that pursuant to this agreement it was corrected and returned to complainant. Defendant in its brief vigorously assails the credibility of this testimony; but it is admitted that the bond was returned and its date of expiration changed to July 1, 1926, the date of the maturity of the certificate of deposit, and the trial judge, who saw and heard the witnesses, accepted complainant's version of the matter. With respect to this matter, he said: "From the testimony and circumstances in this case I am fully convinced that the telephone communication between Booth and Hagey H. Campbell Company prior to the acceptance of the bond occurred just as testified to by Booth; that the defendant, through its agent, not only prepared and issued the bond to guarantee the very certificate of deposit in question, but also represented to the plaintiff that it did guarantee the same and was the kind of bond issued by the company for that purpose and that plaintiff accepted the bond under the assurance that the form was the proper one and the one always used in such cases."

■ We have, then, a case where the parties intended that the bond as executed should guarantee the payment of the time deposit made by complainant in the bank, where a printed form prepared by defendant was used for that purpose with representation that it expressed the intention of the parties, but where, as a result of mistake in selecting the form of contract to be executed or as to the meaning of the language contained therein, there was failure in the instrument, as executed, to express their intent. There can be no question that under such circumstances complainant is entitled to relief in equity. We discussed the basis of this relief in our former opinion; and nothing contained in the briefs or arguments of defendant has convinced us that the position there taken was unsound, or that defendant, after agreeing to guarantee this particular risk and accepting premiums therefor, should be allowed to escape liability because of the mistake in reducing the contract to writing or in selecting the form of bond to be used; a mistake for which the agent of defendant was primarily responsible. As said in our former opinion (40 F.(2d) 626, 632): "We regard it as well settled that, where parties have agreed upon a contract, but in reducing it to writing fail to embody it in the written instrument through mutual mistake, equity will reform the instrument as written to make it conform to their true agreement. While mistake of law is ordinarily no ground of relief, it is ground therefor where the mistake relates, not to the legal effect of the actual contract, but to the import of the language used, so that the instrument as written fails to express the intention which the parties had in mind, especially where the written contract is a printed form prepared by the party who would profit by the mistake and selected by his agent as expressing the contract which has been agreed upon. Oliver v. Mutual Commercial Marine Ins. Co., 2 Curt. 277, Fed. Cas. No. 10,498; Skelton v. Federal Surety Co. (C. C. A. 8th) 15 F.(2d) 756; Medical Society of S. C. v. Gilbreth (D. C.) 208 F. 899; Maher v. Hibernia Ins., 67 N. Y. 283; Esch Bros. v. Home Insurance Co., 78 Iowa, 334, 43 N. W. 229, 16 Am. St. Rep. 443; 14 R. C. L. 902; note 28 L. R. A. (N. S.) 811, 831 and cases there cited."

■ One of the contentions of defendant most strongly urged upon us on this appeal is that the testimony of Booth as to the telephone conversation with the agency of defendant should be excluded, on the ground that the identity of the party with whom he was talking was not shown, and his authority to bind defendant not established. We agree with the judge below, however, that the correction and return of the bond in accordance with the telephone conversation sufficiently identifies the person with whom Booth was talking as one having authority in the prem-

ises. Without going into the admissibility of telephone conversations generally, there can be no doubt as to their admissibility when coupled with evidence showing that the person with whom business was transacted by telephone had authority to transact it. And there could be no better way of showing this than by proof that, pursuant to the conversation, action was taken which only an authorized agent could take, as that after calling the office of an insurance agency and requesting a change in a bond or policy, the one calling received through the mail a bond or policy containing the change promised in the conversation. See 1 R. C. L. 477; Knickerbocker Ice Co. v. Gardiner Co., 107 Md. 556, 69 A. 405, 16 L. R. A. (N. S.) 746; Clough v. Western Union Tel. Co., 99 S. C. 484, 83 S. E. 916; Tabor Coal Co. v. Cohen, 189 Ill. App. 190; Campbell v. Willis, 53 App. D. C. 296, 290 F. 271; note Ann. Cas. 1916E, 977, 978; Wigmore on Evidence (2d Ed.) vol. 4, pp. 587, 588.

■■ Another contention is that reformation should be denied because neither in the bill of complaint nor in the proofs is there any showing as to the terms of an antecedent contract which could be incorporated in the bond by reformation; but we are not impressed with this contention. As we have seen above, the agreement of the parties pursuant to which the bond was executed was that it should guarantee the payment of the time deposit. The choice of the form of the bond to accomplish this result was left with defendant; and it issued the wrong form because of mistake in the selection of the form or as to the meaning of the language used in the form selected. It is idle to say that equity will deny relief under such circumstances because the parties did not formulate in words the exact terms which the bond to be issued should contain. As a matter of fact, the bond as issued would effectuate their intention if the words "in an account subject to check" were stricken therefrom and the provisions requiring withdrawal of the deposit under certain circumstances were eliminated. But at this time there is no point in determining the exact words requisite to reformation and inserting them in the bond. The court, having found that the agreement of the parties was that a bond should be executed guaranteeing the payment of the deposit, and that through mutual mistake the bond as executed did not cover the agreement, may consider the bond as reformed to embody the agreement, and enter decree for the amount due thereunder. Hornick v. Union Pac. R. Co., 85 Kan. 568, 118 P. 60, 38 L. R. A. (N. S.) 826, Ann.

Cas. 1913A, 208; Conner v. Baxter, 124 Iowa, 219, 99 N. W. 726, 728; Lardner v. Williams, 98 Wis. 514, 74 N. W. 346; Wisconsin Marine Ins. Co. v. Mann, 100 Wis. 596, 76 N. W. 777; Ætna Ins. Co. v. Brannon, 99 Tex. 391, 89 S. W. 1057, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020.

■ Objection is made as to the amount of the decree for that dividends paid by the insolvent bank were applied in payment of accrued interest on the certificate of deposit and only the excess against the principal, and decree was entered against defendant for the balance due on the principal; whereas the contention of defendant is that the entire amount of the dividends should have been applied on the principal and decree entered only for the balance remaining due thereon. We think, however, that the action of the court below was correct. The amount of the bond was sufficient to cover the face of the certificate but not accrued interest; and the rule is well settled that where both debtor and creditor fail to direct the application of a payment, the law will apply it, in the interest of the creditor, to the debt which is least secured. We have recently held that this principle requires that a payment be applied on an unsecured debt rather than on one guaranteed by a compensated surety. Maryland Casualty Co. v. City of South Norfolk (C. C. A. 4th) 54 F.(2d) 1032, 1038. Defendant contends that the principle does not apply here because, upon payment of the penalty of the bond, it is subrogated to complainant's right to dividends. The rule, however, is that a surety liable for only a part of a debt does not become subrogated to collateral or to remedies available to the creditor unless he pays the whole debt, or it is otherwise satisfied. U. S. v. National Surety Co., 254 U. S. 73, 41 S. Ct. 29, 65 L. Ed. 143; Maryland Casualty Co. v. Fouts (C. C. A. 4th) 11 F. (2d) 71, 46 A. L. R. 852.

■ The point is raised that the bank and its receiver were necessary parties to any suit for the reformation of the bond, and that, as they were not made parties, the court was without power to decree reformation. It is admitted, however, that the bank was a Pennsylvania corporation and its receiver a citizen and resident of that state, and that it was impossible to secure service of process upon them in this suit. It appears also that the defendant will not be in any way prejudiced by reason of failure to make the bank or its receiver a party; for the decree directs that, upon the payment by the defendant of its liability under the bond as reformed, the com-

plainant shall assign to it the certificate of deposit with all of its rights thereunder. No right will be lost by defendant, therefore, by reason of the fact that the bank and its receiver have not been made parties to the suit for reformation; and the rights of the bank and the receiver will not be prejudiced by the decree against the defendant, for its liability under the certificate of deposit will be in nowise affected. The case, we think, falls clearly within section 50 of the Judicial Code (28 USCA § 111) and Equity Rule 39 (28 USCA § 723). The former of these provides: "When part of several defendants can not be served. When there are several defendants in any suit at law or in equity, and one or more of them are neither inhabitants of nor found within the district in which the suit is brought, and do not voluntarily appear, the court may entertain jurisdiction, and proceed to the trial and adjudication of the suit between the parties who are properly before it; but the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process nor voluntarily appearing to answer; and non-joinder of parties who are not inhabitants of nor found within the district, as aforesaid, shall not constitute matter of abatement or objection to the suit."

And Equity Rule 39 provides: "Absence of Persons Who Would be Proper Parties. —In all cases where it shall appear to the court that persons, who might otherwise be deemed proper parties to the suit, cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may, in its discretion, proceed in the cause without making such persons parties; and in such cases the decree shall be without prejudice to the rights of the absent parties."

We think that the bank and its receiver fall within the classification of conditionally necessary but not indispensable parties, i. e., of parties who have an interest in the controversy, but one which is separable from that of the parties before the court and will not be affected by a decree entered in their absence. The rule as to necessity of joinder was fully considered by us in the case of Halpin v. Savannah River Electric Co. (C. C. A. 4th) 41 F.(2d) 329, 330, and was stated as follows: "In considering the necessity of joinder, parties group themselves into three classes: (1) Those who are merely proper parties; (2) those who are necessary, or what have been called 'conditionally necessary,' parties; and (3) those who are indispensable parties. In the first class are formal parties and those who, while not interested in the controversy between the immediate litigants, have an interest in the subject-matter which may be conveniently settled in the litigation. The absence of such parties is no ground for dismissal. In the second class are those who have an interest in the controversy, but one which is separable from that of the parties before the court and which will not be affected by a decree made in their absence. These should be made parties if possible, in order that there may be a complete determination in one suit of all questions involved. If, however, they are beyond the jurisdiction of the court, or if their joinder would result in ousting the jurisdiction, the court may in its discretion proceed, without their joinder, under Equity Rule 39. In the third class are those who have an interest in the controversy of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. Unless these are made parties, the court will not entertain the suit. Shields v. Barrow, 17 How. 130, 139, 15 L. Ed. 158; Barney v. Baltimore, 6 Wall. 280, 284, 18 L. Ed. 825; Williams v. Bankhead, 19 Wall. 563, 571, 22 L. Ed. 184; Niles-Bement-Pond Co. v. Iron Moulders' Union Local No. 68, 254 U. S. 77, 80, 41 S. Ct. 39, 41, 65 L. Ed. 145."

The case in principle is not unlike Cobb v. Interstate Mortgage Corp. (C. C. A. 4th) 20 F.(2d) 786, wherein suit was instituted against the transferee of the assets of an insolvent corporation, not a party to the suit, to enforce liabilities of the latter. It was held that jurisdiction was not defeated by reason of failure to join the corporation which had made the transfer, where it appeared that, as a result of its insolvency and transfer of assets, it could not be injuriously affected by any decree which might be entered. The authorities were reviewed, and we quoted with approval the following statement of the rule from the opinion of the late Judge Sanborn in Silver King Coalition Mines Co. v. Silver King Consol. Mining Co. (C. C. A. 8th) 204 F. 166, 169, Ann. Cas. 1918B, 571: "An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to the suit without radically and injuriously affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsist-

ent with equity and good conscience. Every other party who has any interest in the controversy or subject-matter which is separable from the interest of the other parties before the court, so that it will not necessarily be directly or injuriously affected by a decree which does complete justice between them, is a proper party to a suit. But he is not an indispensable party, and if his presence would oust the jurisdiction of the court the suit may proceed without him."

In Waterman v. Canal-Louisiana Bank, 215 U. S. 33, 49, 30 S. Ct. 10, 14, 54 L. Ed. 80, Mr. Justice Day thus stated the rule relating to indispensable parties: "The relation of an indispensable party to the suit must be such that no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the rights of such absent party. 1 Street, Fed. Eq. Pr. § 519. If the court can do justice to the parties before it without injuring absent persons, it will do so, and shape its relief in such a manner as to preserve the rights of the persons not before the court. If necessary, the court may require that the bill be dismissed as to such absent parties, and may generally shape its decrees so as to do justice to those made parties, without prejudice to such absent persons. Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260.

As the court here could do full justice between complainant and defendant without injuriously affecting any right of the bank or its receiver, we think that they were not indispensable parties, and that the court properly proceeded without them.

For the reasons stated, we think that the decree entered for complainant was correct, and same is accordingly affirmed.

Affirmed.