**STANDARD OIL CO. v. CENTURY INDEMNITY CO. et al.**

**Civ. A. No. 817.**

United States District Court
N. D. Alabama, Northwestern Division.
May 9, 1952.

White, Bradley, Arant, All & Rose, Birmingham, Ala., Peach, Caddell & Shanks and Harris & Harris, all of Decatur, Ala., for plaintiff.

Mitchell & Poellnitz, Florence, Ala., and George W. Yancey, Birmingham, Ala., for defendant Century Indemnity Co.

Bradshaw & Barnett, Florence, Ala., for defendant Alabama-Tennessee Natural Gas Co.

LYNNE, District Judge.

This cause coming on to be heard was, on the 15th and 16th days of April, 1952, at Florence, Alabama, tried to the Court without the intervention of a jury and in conformity with the pre-trial order of February 27, 1952. The Court having considered carefully the evidence adduced upon the trial by the parties hereto, including the testimony taken orally before the Court, the exhibits offered in evidence by the respective parties, the competent and relevant portions of the depositions, the plaintiff's request for admissions of fact and defendant The Century Indemnity Company's response thereto, the interrogatories propounded by plaintiff to The Century Indemnity Company, and the answers thereto, having read the briefs of counsel, heard oral arguments of counsel and having conducted an independent research in the law of the case, now proceeds to make and enter the following findings of fact, conclusions of law and judgment.

### Findings of Fact

1. On June 16, 1949, and at all times here involved subsequent thereto, Lehman, Hoge and Scott was a partnership composed of H. F. Lehman, V. V. Lehman, Phil Hoge and P. J. Scott, having its principal place of business in Harlingen, Texas, and was engaged in business as a general contractor in construction work, including the construction and installation of natural gas pipe lines; Alabama-Tennessee Natural Gas Company, hereinafter referred to as "Alabama-Tennessee," was a corporation incorporated under the laws of the State of Delaware, with its principal place of business in Florence, Alabama, and in Sheffield, Alabama, and was engaged in the business of the transmission of natural gas through pipelines and the sale of the same at wholesale; The Century Indemnity Company, hereinafter referred to as "Century," was a corporation incorporated under the laws of the State of Connecticut and was engaged in the insurance, casualty, bonding and suretyship business throughout the United States; Standard Oil Company was a corporation organized under the laws of the State of Kentucky and was engaged in business in the State of Alabama as a seller and distributer of gasoline, oil, lubricants, diesel fuel and similar products; H. A. Bain, doing business as Harold Bain Com-

pany, was General Agent of The Century Indemnity Company and lived at Corpus Christi, Texas; Harlingen, Texas was located in his territory and at Harlingen he had a sub-agent by the name of J. L. Head, who did business under the name of J. L. Head Insurance Agency.

Following request for bids, Lehman, Hoge and Scott made its proposal on June 16, 1949, to Alabama-Tennessee to build for it a natural gas pipe line from Selmer, Tennessee, to Muscle Shoals, Alabama, a distance of some eighty miles, with Alabama-Tennessee to furnish the pipe and Lehman, Hoge and Scott to emplace and tie it together. Thereafter, upon its receipt, Alabama-Tennessee notified Lehman, Hoge and Scott that, pursuant to the proposal, payment and performance bonds would be required on this construction work and Lehman, Hoge and Scott advised Alabama-Tennessee, and particularly H. A. Bradshaw, its Vice President and General Counsel, that such bonds could be made through H. A. Bain, at Corpus Christi, Texas.

Thereafter, and prior to June 21, 1949, and on or about June 20, 1949, H. A. Bradshaw called H. A. Bain at Corpus Christi, Texas, and advised that Alabama-Tennessee had a proposal from Lehman, Hoge and Scott to build the pipe line in question, that Lehman, Hoge and Scott were to furnish performance and payment bonds on such job, and that he had been advised by these parties that through H. A. Bain the bonds would be written. In response, Bain replied that the bonds could and would be furnished and would be written by Century. Bradshaw asked Bain for telegraphic confirmation. The following day, June 21, 1949, Bain wired Bradshaw from Corpus Christi, Texas, as follows:

"H. A. Bradshaw
Florence Ala
"Home Office Century Indemnity Company today approved Performance Bond Lehman Hoge and Scott running in favor Alabama Tennessee Natural Gas Company Stop Presume your approved type of bond will be submitted for execution Stop Thanks very much

to you and Mr. Grizzle for splendid cooperation.
"Harold Bain Co General Agents The Century Indemnity Co."

On the 28th day of June, 1949, Bradshaw again called Bain at Corpus Christi, advising that the contract between Lehman, Hoge and Scott and Alabama-Tennessee had been executed, subject to furnishing the bonds requested in their previous conversation; advised Bain that he, Bradshaw, would not write the bonds but for Bain to write the bonds, and gave to him the necessary data as to amount, nature and character of the contract. Bradshaw asked Bain for telegraphic confirmation of the execution of the bonds and on the same date, June 28, 1949, Bain wired Bradshaw such confirmation:

"H. A. Bradshaw
Alabama Tennessee Natural Gas Co.
Florence Ala
"Have today executed $530,000 Performance and Payment Bonds pipe line job Selmer, Tennessee to Muscle Shoals Alabama your favor for Lehman Hoge and Scott. Bond will be forwarded you air mail when signed by contractors.
"Harold Bain Co. General Agents The Century Indemnity Co."

On July 1, 1949, Bradshaw forwarded to Bain a copy of the contract of June 28, 1949, between Lehman, Hoge and Scott and Alabama-Tennessee which provided for performance and payment bonds, if required by Alabama-Tennessee, and on July 4, 1949, Bain sent to Bradshaw the performance and payment bonds dated June 28, 1949, copies thereof being Exhibits 1 and 2 to the complaint, together with a power of attorney, dated June 29, 1949, executed and acknowledged by J. G. Hesselbrack, a vice president of Century, and attested and acknowledged by E. S. Crookes, Secretary of Century, and a witness in this case. The pertinent portions of such power of attorney are as follows:

"Know All Men By These Presents, That the Century Indemnity Company
* * *

"Does hereby nominate, constitute and appoint H. A. Bain of Corpus Christi, Texas its true and lawful attorney(s) in fact, with full power and authority hereby conferred to make, sign, execute, acknowledge and affix the Corporate Seal of the Corporation, as Surety, as its act and deed, to one and only one specific bond or undertaking described herein as:

"Performance and Payment bonds of 100% each covering contract in the amount of $530,000 on behalf of Lehman, Hoge and Scott of Harlingen, Texas for the construction of 10¾ inch pipe line from near Selmer, Tennessee to near Muscle Shoals, Alabama a distance of approximately 80 miles."

The bonds were prepared by H. A. Bain at Corpus Christi, Texas, executed by him as a General Agent of Century, using Century Forms C1436 and C1437, and each referred to the fact that the contract there described was made a part thereof as if fully set out therein.

2. On the 23rd day of September, 1950, Alabama-Tennessee received from Lehman, Hoge and Scott proposals for the construction by them of a pipe line from Muscle Shoals to Decatur, Alabama, and thence across the Tennessee River. Prior to the proposals made by Lehman, Hoge and Scott on September 23, 1950, P. J. Scott, one of the partners of Lehman, Hoge and Scott, informed H. A. Bradshaw that his firm had lost heavily on two pipe line jobs in Virginia, the work having been done in the summer of 1950.

On the night of September 25, 1950, in Florence, at the home of Bradshaw, two contracts were signed by Lehman, Hoge and Scott and Alabama-Tennessee for the construction of the pipe lines referred to in the proposals noted above. These contracts required performance and payment bonds to be furnished by Lehman, Hoge and Scott and at the time, Bradshaw told V. V. Lehman and P. J. Scott that performance and payment bonds with the same coverage as was had on the Selmer-Muscle Shoals job would have to be furnished. To this the contractors agreed, and made an appointment to meet Bradshaw at his law office on the following day to telephone H. A. Bain. Accordingly, on September 26, 1950, in the presence of Scott, Bradshaw talked with Bain, at Corpus Christi, Texas, and advised him that, subject to the furnishing of bonds, Alabama-Tennessee had entered into contracts with Lehman, Hoge and Scott for the construction of the Muscle Shoals-Decatur and river crossing jobs at $340,000, and that Alabama-Tennessee wanted the same bond coverage as Bain previously wrote for it on the pipe line construction contract from Selmer, Tennessee, to Muscle Shoals, Alabama, that is, performance and payment bonds, and inquired as to whether or not Century would write such bonds. Bain replied that Century would write such bonds and that the same coverage as was written on the former job would be furnished. Bradshaw then told Bain that Alabama-Tennessee wanted the matter handled in the same way as the Selmer job had been handled and asked for telegraphic confirmation of the fact that the bonds would be written and on the following day, September 27, 1950, Bain wired Bradshaw from McAllen, Texas, as follows:

"H. A. Bradshaw
Care Alabama Tennessee Natural Gas Co.
"Century Indemnity Company agreeable to executing performance bond price line project for Lehman Hoge and Scott stop Please forward bond for execution as in previous case.
                    "Harold Bain Company."

In using the words "performance bond" in this telegram, as in the previous one of June 21, 1949, from Bain to Bradshaw, and as in the telegram of June 28, 1949, in using the word "bond" Bain had reference to performance and payment bonds substantially identical with those issued on the Selmer, Tennessee-Muscle Shoals contract, and Bradshaw so understood said telegram.

3. After Bradshaw's conversation with Bain on September 26, 1950, and on that date, Bain called E. S. Crookes, Secretary of and in charge of the Bond Department of Century at Hartford, Connecticut, and discussed with him the writing of the same

performance and payment bond coverage for Lehman, Hoge and Scott on the Muscle Shoals-Decatur and river crossing jobs as had been written by Century on the previous Selmer-Muscle Shoals job. Crookes did not commit Century to writing such bonds at that time and wired Bain to that effect at McAllen, Texas, on that said date, September 26. On the following day, September 27, Bain again called Crookes at Hartford and, notwithstanding the deposition of Crookes and the oral testimony of Bain to the contrary, the Court finds as a fair and reasonable inference from all of the evidence, aided by close observation of Bain's demeanor on the stand, that Crookes thereupon told Bain to execute and issue both performance and payment bond coverage in behalf of Lehman, Hoge and Scott on the Muscle Shoals-Decatur and river crossing contracts. On the same day, Bain wired Bradshaw in confirmation of his previous commitment to Bradshaw to write performance and payment bond coverage on the Muscle Shoals-Decatur-river crossing contracts, as appears from the telegram of September 27 from Bain to Bradshaw next hereinabove.

4. After his conversation with Bain on September 26, 1950, and after he had received Bain's telegram of September 27, 1950, Bradshaw advised M. D. Prouty, who was Treasurer and Assistant Secretary of Alabama-Tennessee, that Bain had agreed to write performance and payment bonds for Century. About the middle of October, Prouty had not received the bonds and called J. L. Head, at Harlingen, Texas, with whom Prouty had had dealings in connection with paying the premiums on the former bonds and inquired of Head when Alabama-Tennessee was to receive the bonds. Head replied that there was some question as to who would prepare the bonds and Prouty then told Head that Century prepared the previous bonds on the former contract and should go ahead and prepare the bonds. Prouty then gave Head the necessary information as to the amount of the contract and a description of the pipe line project to be inserted in the bond. On October 26, 1950, Prouty received a letter from Bain advising that the delay in send-

ing the bond was due to his assumption that the previous bonds had been prepared by Alabama-Tennessee; that he now found that the previous bonds had been prepared by his office, and he requested information as to the contract in order that he might prepare the bond. On receipt of this letter, Prouty called Bain at Corpus Christi and told him that he had thought the bonds were already on their way and that he was concerned about the delay and again furnished the information relative to the contract and the nature of the work to be performed by Lehman, Hoge and Scott. In that conversation, Bain told Prouty that Century had a new form of bond which contained in a single instrument the same general provisions as the two bonds written in connection with the Selmer, Tennessee to Muscle Shoals contract, and Prouty replied that as long as the bond contained the same general provisions as the two previous bonds he did not care whether it was in the form of one instrument or two instruments, and Bain then told Prouty that the bond would be prepared and forwarded air mail that day.

5. Ultimately, the bond, a copy of which is made Exhibit 3 to the complaint, was received by Prouty in Florence on Saturday afternoon, October 28, 1950, after countersignature by Century's Agent at Birmingham. Upon receipt thereof, Prouty immediately called Bradshaw at his home. Prouty did not read the bond to Bradshaw, but in reply to questioning from Bradshaw advised that he had read the bond and that while it was in the form of a single document, it appeared to him to have the same provisions as the previous bonds and that it correctly described the names of the parties involved, the amount, nature and character of the work to be done and was properly signed by all except P. J. Scott, who was to sign it on the following Monday, October 30, 1950.

When Prouty received the bond on October 28 and retained it, he believed that the bond provided the same coverage as to performance and payment as had been furnished on the Selmer-Muscle Shoals contract and this belief was induced by Bain's statement to Prouty in their telephone con-

versation on October 26, 1950, that the bond would be in the form of a single document but would contain the same general provisions as the two previous bonds had contained. Likewise, after Bradshaw's conversation with Prouty, he, Bradshaw, continued in the belief that the bond coverage was in accordance with his agreement with Bain.

6. J. M. Cunningham, an underwriter in the Bond Department of Century, at Hartford, Connecticut, on the instructions of Crookes, prepared on October 30, 1950, a power of attorney to Bain, which, as was the previous power of attorney, was executed and acknowledged by J. G. Hasselbrack, Vice President of Century, and by E. S. Crookes, Secretary of Century. The pertinent portion of such power of attorney is as follows:

"Know All Men By These Presents, That The Century Indemnity Company * * *

"Does hereby nominate, constitute and appoint H. A. Bain of Corpus Christi, Texas its true and lawful attorney (s) in fact, with full power and authority hereby conferred to make, sign, execute, acknowledge and affix the Corporate Seal of the Corporation, as Surety, as its act and deed, to one and only one specific bond or undertaking described herein as:

"Performance and Payment bond in the amount of $340,000.00 on behalf of V. V. and H. F. Lehman, P. J. Scott and Phil Hoge, doing business as Lehman, Hoge & Scott, of Harlingen, Texas, covering Two (2) contracts as follows: Construction and installation of 8⅝" O. D. natural gas pipe line approximately 30 miles in length beginning at Muscle Shoals, Alabama and extending to the vicinity of Decatur, Alabama and 6-⅝" O. D. pipe line approximately 4 miles in length in the vicinity of Decatur, Alabama; and for the construction of two (2) 6-⅝" O. D. by .432" wall thickness pipe line crossing the Tennessee river in the vicinity of Decatur, Alabama, each line being approximately 12,000 feet in length."

Cunningham mailed this power of attorney to M. D. Prouty, Jr., on October 30, 1950, and the power of attorney was received by Prouty and placed with the bond.

7. On January 16, 1951, following default on the river crossing job by Lehman, Hoge and Scott, Prouty wrote Bain listing the open accounts of Lehman, Hoge and Scott relating to the Muscle Shoals-Decatur and river crossing jobs under the contracts of September 25, 1950.

Prouty in this letter to Bain advised that the total amounts due various suppliers of material exceeded the amount which would be payable to Lehman, Hoge and Scott by Alabama-Tennessee under the river crossing contract and asked for information as to the manner in which such obligations were to be paid, and further requested that if it was desired that any portion of these obligations be paid by Alabama-Tennessee from the amount in hand due Lehman, Hoge and Scott, to grant specific authorization for such payments by his Company.

On February 5, 1951, E. D. McGee, Attorney for the Bond Department of Century at Hartford, came to Florence for the purpose of attempting adjustment of the rights of Century under the bond issued by Century and to arrange for the completion of the physical performance of the river crossing contract; in conference with Bradshaw and Prouty, McGee advised them that the bond in suit was a performance and lien claim bond and did not cover the liability of the contractor for payments to parties furnishing labor and material. In this conversation, in the presence of McGee and to Prouty, Bradshaw stated, upon being so advised by McGee, "Well, Mr. Prouty, our Company will be about as popular as a skunk in the neighborhood if that is so."

In March, 1951, both Alabama-Tennessee and Standard Oil Company requested Century to reform the bond.

8. The bond premium on the bond written by Century on the Muscle Shoals-Decatur-river crossing job, Exhibit 3 to the complaint, was at the rate of five dollars per thousand of the contract price and the bond premium on the performance and payment bonds, Exhibits 1 and 2 to the com-

plaint, written by Century on the Selmer-Muscle Shoals job was also five dollars per thousand of the contract price. Both of these premiums, at the identical rate, were paid by Alabama-Tennessee to Century through Century's sub-agent at Harlingen, Texas, J. L. Head.

9. Bain's failure to write the bond on the Muscle Shoals-Decatur-river crossing contracts pursuant to and in conformity with the agreement of the parties was due to one of the following: (1) a manual mistake on his part in using an inappropriate bond form; (2) an oversight or failure to recollect the terms of his agreement with Bradshaw; (3) an honest opinion that the bond form he used provided the protection agreed on; or (4) an intentional failure to write a bond in accordance with the agreement, in other words, fraud.

10. Alabama-Tennessee did not discover that the bond made Exhibit 3 to the complaint did not comply with the agreement between Bradshaw and Bain made on September 26, 1950, until February 4, ·1951. A few days prior to January 16, 1951, Century, acting through Bain, consented to Alabama-Tennessee paying out of the unpaid balance of the contract price due from it to Lehman, Hoge and Scott the sum of $41,606.62 to the First National Bank of Florence under assignments executed in favor of said bank by Lehman, Hoge and Scott, and also consented to Alabama-Tennessee applying the sum of $5,128.47 against payroll advances made by it to Lehman, Hoge and Scott. Bain, at the time he consented to the disbursement of said funds as aforesaid, knew that he had agreed to write payment and performance bond coverage for Century in favor of Alabama-Tennessee, and Century had consented to the assignments executed by Lehman, Hoge and Scott to the First National Bank, of Florence. Moreover, the agents of Century who consented to said assignments knew at the time that Bain had agreed with Bradshaw prior thereto to write performance and payment bonds.

11. On April 3, 1951, E. D. McGee, Attorney for the Bond Department of Century at Hartford, wrote Mr. Eastep, President of Alabama-Tennessee from Hartford to the effect, among other things, that from his investigation of the facts and circumstances surrounding the conduct of Alabama-Tennessee as obligee under the bond of September 25, 1950, there had been no breach or violation of any obligations thereunder of it by the obligee to the surety.

Conclusions of Law

1. This Court has jurisdiction of this action, a class suit by the plaintiff on its behalf and on behalf of all other creditors of Lehman, Hoge and Scott similarly situated, and also has jurisdiction of the parties hereto.

2. H. A. Bradshaw, on behalf of Alabama-Tennessee, and H. A. Bain, on behalf of Century, entered into an agreement on September 26, 1950, whereby Century would furnish to Alabama-Tennessee as obligee full performance and payment bond coverage on the Muscle Shoals-Decatur and River Crossing contracts as was previously so furnished by Century on the Selmer-Muscle Shoals contract, the bond coverage previously furnished by Century on the Selmer-Muscle Shoals contract being evidenced by Exhibits 1 and 2 to the complaint.

3. On September 27, 1950, Bain obtained from Century at Hartford authority to issue performance and payment bond coverage on the Muscle Shoals-Decatur and river crossing contracts.

4. Pursuant to his agreement with Bradshaw on September 26, 1950, and pursuant to authorization from the Home Office of Century, and on September 27, 1950, Bain, by telegram of that date to Bradshaw, ratified and confirmed his agreement of the previous day with Bradshaw that Century would write and issue performance and payment bonds on the Muscle Shoals-Decatur and river crossing contracts.

5. On October 26, 1950, Bain, on behalf of Century, agreed with Prouty, acting for Alabama-Tennessee, to write a bond in favor of Alabama-Tennessee in the form of one document in connection with the Muscle Shoals-Decatur and river crossing contracts, which bond was to contain the same provisions as the two bonds which had been written and issued by Century in con-

nection with the Selmer-Muscle Shoals contract.

6. On October 30, 1950, Century, at its Home Office in Hartford, Connecticut, through its Vice President, J. G. Hasselbrack, and its Secretary, E. S. Crookes, by appropriate written power of attorney ratified and confirmed Bain's authority to issue a performance and payment bond in the sum of $340,000.00, covering the Muscle Shoals-Decatur and river crossing contracts in favor of Lehman, Hoge and Scott with Alabama-Tennessee as principal.

7. The writing and acceptance of the bond made Exhibit 3 to the complaint, rather than a bond conforming to the agreement between Bain and Bradshaw on September 26, 1950, and the agreement between Bain and Prouty on October 26, 1950, was due to mutual mistake of the parties, or to mistake on the part of Alabama-Tennessee, known to or suspected by Century, and inequitable conduct or fraud on the part of the latter. Commercial Casualty Insurance Co. v. Lawhead, 4 Cir., 62 F. 2d 928; Hand v. Cox, 164 Ala. 348, 51 So. 519; Great A & P Tea Co. v. Engel Realty Co., 241 Ala. 236, 2 So.2d 425.

8. Plaintiff, Standard Oil Company, having furnished material under a direct contract with Lehman, Hoge and Scott, the principals, which was used in the performance of the contracts to which the bond related, would have had a right at law to sue upon the bond if it had been executed in form and substance in conformity with the mutual agreement and understanding of the parties thereto. Therefore, plaintiff, in its own behalf and as a representative of a large class of claimants similarly situated, each of whom is a third party beneficiary of the contract expressing the mutual agreements of the actual parties thereto, may maintain an equitable action for its reformation. Hunt v. Century Indemnity Co., 58 R.I. 336, 192 A. 799, 112 A.L.R. 902; Copeland v. Keller, 221 Ala. 533, 129 So. 571; Annotation: 112 A.L.R. 909; 76 C.J.S. Reformation of Instruments, § 53.

9. In view of the foregoing conclusion, findings of fact and conclusions of law relating to and concerned with the conduct of Alabama-Tennessee and its negligence vel non subsequent to the actual delivery to it of the bond sought to be reformed are believed to be irrelevant. They are included for whatever consideration they may merit in the event of an appeal. For the same reason, the Court pretermits consideration of the motion filed in behalf of Alabama-Tennessee seeking its realignment as a party plaintiff.

10. Reformation of the bond made Exhibit 3 to the complaint is not barred by negligence on the part of Alabama-Tennessee or anyone acting in its behalf. Great A & P Tea Co. v. Engel Realty Co., 241 Ala. 236, 2 So.2d 425; Snell v. Insurance Co., 98 U.S. 85, 25 L.Ed. 52; Griswold v. Hazard, 141 U.S. 260, 11 S.Ct. 972, 35 L.Ed. 678.

11. Neither the plaintiff nor Alabama-Tennessee, through which plaintiff claims the right to reformation, is estopped from maintaining this action to reform the bond made Exhibit 3 to the complaint.

12. The testimony taken orally before the Court, the exhibits offered in evidence, including the competent and relevant portions of the depositions, the request for admissions, and defendant Century's response thereto, and plaintiff's interrogatories, and Century's answers thereto are clear, satisfactory, conclusive and convincing beyond reasonably controversy within the rules governing the nature of proof in reformation suits, to the point that the suit bond is due to be reformed so as to include in one instrument the performance and payment bond features of the two bonds, Exhibits 1 and 2 to the complaint, issued by Century on the Selmer-Muscle Shoals contract, with Alabama-Tennessee as obligee and Lehman, Hoge and Scott as principal. Hand v. Cox, 164 Ala. 348, 51 So. 519; Warren v. Crow, 198 Ala. 670, 73 So. 989.

13. In view of the above findings of fact and conclusions of law, the plaintiff's Second Claim is moot, and a decision on the same is not appropriate.